# IN THE

# United States Court of Appeals
## FOR THE THIRD CIRCUIT

U.S. SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

v.

THOMAS MEGAS,

*Defendant-Appellant,*

and

TODD LAHR,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**APPENDIX VOLUME II OF II (Pages 45 - 163)**

J. Scott Ballenger
Ben Buell (Third Year Law Student)
Jonathan Duvall (Third Year Law Student)
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road
Charlottesville, VA 22903
202-701-4925
sballenger@law.virginia.edu

*Court Appointed Amicus Curiae Counsel Supporting Appellant*

# TABLE OF CONTENTS

## VOLUME I OF II (*attached to Opening Brief*)

Appendix Page

Notice of Appeal
2022.08.12 [ECF62] ................................................................................... 1

Notice of Appeal
2022.08.19 [ECF64] ................................................................................... 2

Memorandum Opinion
2022.07.20 [ECF60] ................................................................................. 29

Order
2022.07.20 [ECF61] ................................................................................. 44

## VOLUME II OF II (*filed separately*)

District Court Docket [5:20-cv-01593-EGS] ............................................. 45

Complaint
2020.03.23 [ECF1] ................................................................................... 54

Attachment to Plaintiff's Motion for an
Extension of Time to Serve Defendant Thomas Megas
2020.06.18 [ECF8]:

    Att. 2:    Scarlato Declaration dated June 18, 2020 (First) [ECF8-2] ......... 80

Attachments to Plaintiff's Motion to Authorize Alternative
Service, Or, Alternatively, to Grant an Extension of Time to
Serve Defendant Thomas Megas
2020.12.14 [ECF15]:

    Att. 2:    Scarlato Declaration dated Dec. 14, 2020 (Third) [ECF15-2] ...... 82

Excerpts of Exhibits 1 - 11 [ECF15-3]:

    Ex. 1:    Hague Convention Service Request ........................................ 87

    Ex. 4:    Oct. 23, 2020 FINMA Response to SEC's
                Request for Information on Megas ........................................ 91

Attachment to Plaintiff's Motion for Default
Judgment Against Defendant Thomas Megas
   2021.07.20 [ECF24]:

    Excerpts of Exhibits 1 - 7 [ECF24-3]:

    Ex. 4:    SEC Email to Megas ................................................................ 96

    Ex. 6:    RPost Reply to SEC Email ........................................ 98

Defendant Thomas Megas Motion the Court to Dismiss the
Default Judgment Against Him Entered on 30th July 2021
   2021.08.05 [ECF29] ................................................................ 100

Order (Plaintiff's Response and Motion Hearing)
   2021.08.10 [ECF30] ................................................................ 113

Request to Reconsider Denial of Request for Telephone/Video
Hearing for Hearing Scheduled for Sept. 10, 2021 Consider Motion
to Dismiss Default Judgment Against Thomas Megas on July 30, 2021
and to Cite Explanation for Requesting a Physical Hearing
   2021.08.18 [ECF31] ................................................................ 114

Exhibits to Plaintiff's Opposition to Defendant
Thomas Megas' Motion to Dismiss the Default Judgment
   2021.08.24 [ECF32]:

    Ex. 1:    Apr. 27, 2020 Letter from the Swiss Authorities
                Concerning the Commission's Hague Convention Request
                [ECF32-2] ................................................................ 121

Ex. 3: Oct. 19, 2020, Letter from The Swiss Authorities
Returned the Commission's Hague Convention Request
Unserved [ECF32-4] ........................................................... 127

Ex. 5: List of Companies Obtained by Searching Megas'
Name in The United Kingdom Companies House
Database [ECF32-6] ............................................................ 128

Ex. 6: Oct. 27, 2020, Email Sent Megas at Known Email
Address [ECF32-7] ............................................................. 130

Ex. 7: RPost Proof of Delivery of Oct. 27, 2020 Email to
Megas [ECF32-8] ............................................................... 131

Ex. 9: RPost Proof of Delivery of Feb. 10, 2021 Email
to Megas [ECF32-10] .......................................................... 133

Ex. 11: Email Automated Response sent to Inactive
Hotmail Account re: Feb. 10, 2021 email [ECF32-12] .............. 135

Ex. 12: July 20, 2021 Email Automated Response from
Inactive Hotmail Account re: Motion for Default
Judgment [ECF32-13] .......................................................... 137

Ex. 13: July 21, 2021 Email Automated Response from
Inactive Hotmail Account re Hearing [ECF32-14] .................... 139

Exhibit to Plaintiff's Supplemental Filing in Opposition to
Defendant Thomas Megas' Motion to Dismiss the Default Judgment
2021.08.30 [ECF34]:

Ex. 16: Aug. 23, 2021 Letter from Swiss District Judge [ECF34-3] ....... 141

Order (Denying Telephonic Hearing)
2021.09.03 [ECF36] ................................................................. 147

Order (Rescheduling Hearing)
2021.09.09 [ECF40] ................................................................. 148

Order (Denying Telephonic Hearing)
2021.10.19 [ECF43] ................................................................... 149

Order (Rescheduled Telephonic Hearing)
2021.10.29 [ECF47] ................................................................... 150

Order (Supplemental Briefs and Telephonic Hearing)
2021.11.12 [ECF51] ................................................................... 151

Plaintiff's Response in Opposition to Defendant
Thomas Megas' Supplemental Brief
2022.01.10 [ECF57] ................................................................... 152

Attachment to Plaintiff's Motion for Default
Judgment Against Defendant Thomas Megas
2021.07.20 [ECF24]:

    Att. 2:    Scarlato Declaration dated July 20, 2020 (Second)
        [ECF24-2]...................................................................160

**Query**     **Reports**     **Utilities**     **Help**     **Log Out**

CLOSED,APPEAL,A/R,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Allentown)
## CIVIL DOCKET FOR CASE #: 5:20-cv-01593-EGS

SECURITIES & EXCHANGE COMMISSION v. Lahr et al
Assigned to: HONORABLE EDWARD G. SMITH
related Case: 5:19-cr-00496-JFL-1
Case in other court: EDPA, 19-c-496
                    USCA, 22-02497
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 03/23/2020
Date Terminated: 07/30/2021
Jury Demand: Plaintiff
Nature of Suit: 850 Other Statutes:
Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

### Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**

represented by **MATTHEW F. SCARLATO**
SEC
100 F STREET NE
MAIL STOP 5984
WASHINGTON, DC 20549
202-551-3749
Email: scarlatom@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**TODD LAHR**
*TERMINATED: 06/23/2020*

represented by **TODD LAHR**
134 E 3RD Street
Nazareth, PA 18064
610-905-1421
Email: TODDHLAHR@GMAIL.COM
PRO SE

### Defendant

**THOMAS MEGAS**

represented by **THOMAS MEGAS**
ROUTE DE CORBERAYE 18C
LE CHABLE 1934
SWITZERLAND
41 27 565 2617
Email: tpm8@harolds.ch
PRO SE

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 03/23/2020 | 1 | COMPLAINT against TODD LAHR, THOMAS MEGAS, filed by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Civil Cover Sheet, # 2 Designation Form, # 3 Case Management Track Form)(afm, ) (Entered: 03/24/2020) |
|---|---|---|
| 03/23/2020 | | DEMAND for Trial by Jury by SECURITIES AND EXCHANGE COMMISSION. (afm, ) (Entered: 03/24/2020) |
| 03/24/2020 | 2 | Request To Issue Summonses by SECURITIES AND EXCHANGE COMMISSION. (SCARLATO, MATTHEW) Modified on 3/25/2020 (tjd, ). (Entered: 03/24/2020) |
| 04/01/2020 | | 2 Summons Issued as to TODD LAHR, THOMAS MEGAS. Emailed to Counsel on 4/1/2020. (afm, ) (Entered: 04/01/2020) |
| 04/23/2020 | 3 | WAIVER OF SERVICE Returned Executed by SECURITIES AND EXCHANGE COMMISSION. TODD LAHR waiver sent on 3/24/2020, answer due 5/26/2020. (SCARLATO, MATTHEW) (Entered: 04/23/2020) |
| 05/22/2020 | 4 | MOTION FOR EXTENSION OF TIME FED. R. CIV. P. RULE 6(B)(L)(A) filed by TODD LAHR. CERTIFICATE OF SERVICE.(jaa, ) (Entered: 05/26/2020) |
| 05/26/2020 | 5 | NOTICE A review of the Court's records shows that service of the complaint has not been made in the above-captioned action with respect to Defendant, Thomas Megas. In order to eliminate a delay in bringing this case to trial, service must be made by June 23, 2020, in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. Proof of service must be filed with the Clerk's Office within five days of service. If service is not made within the time set forth above, the court will dismiss the complaint without prejudice for lack of prosecution with respect to Defendant, Thomas Megas. (sres, ) (Entered: 05/26/2020) |
| 05/27/2020 | 6 | ORDER THAT THE PLAINTIFF IS GRANTED AN EXTENSION OF TIME TO ANSWER PLAINTIFFS COMPLAINT FOR AN ADDITIONAL SIXTY (60)DAYS UP TO AND INCLUDING JULY 27, 2020. SIGNED BY HONORABLE EDWARD G. SMITH ON 5/27/20. 5/27/20 ENTERED AND COPIES (NOT MAILED TO UNREP DEFT.) AND E-MAILED.**(VACATED PER 7 ORDER FILED 6/3/2020)**.(er, ) Modified on 6/4/2020 (tjd). (Entered: 05/27/2020) |
| 06/03/2020 | 7 | ORDER THAT THE COURTS MAY 27, 2020 ORDER (DOC. NO. 6 ) IS VACATED; THE MOTION FILED BY THE DEFENDANT, TODD LAHR (LAHR), FOR AN EXTENSION OF TIME TO FILE A RESPONSE TO THE COMPLAINT (DOC. NO. 4 ) IS GRANTED; AND LAHR SHALL HAVE UNTIL NO LATER THAN JULY 27, 2020, TO FILE A RESPONSE TO THE COMPLAINT. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/3/20. 6/3/20 ENTERED AND COPIES NOT MAILED TO UNREP AND E-MAILED.(mas, ) (Entered: 06/03/2020) |
| 06/18/2020 | 8 | MOTION *to Extend Time to Serve Defendant Thomas Megas* filed by SECURITIES AND EXCHANGE COMMISSION. Memorandum Declaration Exhibits. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Exhibit Exhibits 1-2)(SCARLATO, MATTHEW) Modified on 6/19/2020 (tjd). (Entered: 06/18/2020) |
| 06/18/2020 | 9 | ORDER THAT THE MOTION FOR AN EXTENSION OF TIME TO SERVE THOMAS MEGAS (DOC. NO. 8 ) IS GRANTED. THE PLAINTIFF SHALL HAVE OCTOBER 15, 2020 TO EFFECT PROPER SERVICE ON THOMAS MEGAS. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/18/20.6/18/20 ENTERED AND COPIES NOT MAILED TO UNREP AND E-MAILED.(mas, ) (Entered: 06/18/2020) |

**46**

| 06/19/2020 | 10 | Consent MOTION for Entry of Final Judgment *As To Defendant Todd Lahr* filed by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(SCARLATO, MATTHEW) Modified on 6/22/2020 (tjd). (Entered: 06/19/2020) |
|---|---|---|
| 06/23/2020 | 11 | ORDER THAT THE CONSENT MOTION FOR ENTRY OF FINAL JUDGMENT AS TO DEFENDANT TODD LAHR (DOC. NO. 10) IS GRANTED. THE CLERK OF COURT SHALL ENTER THE SEPARATELY FILED JUDGMENT IN FAVOR OF THE PLAINTIFF AND AGAINST THE DEFENDANT, TODD LAHR. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/23/20.6/23/20 ENTERED AND COPIES (NOT MAILED TO UNREP) E-MAILED.(er, ) (Entered: 06/23/2020) |
| 06/23/2020 | 12 | FINAL JUDGMENT AS TO DEFENDANT TODD H. LAHR. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/23/20. 6/23/20 ENTERED AND COPIES (NOT MAILED TO UNREP) AND E-MAILED.(er, ) (Entered: 06/23/2020) |
| 08/12/2020 | | REGENERATED #6,7,9,11,12 (JL) (Entered: 08/12/2020) |
| 10/15/2020 | 13 | Second MOTION for Service *to Extend Time to Serve Defendant Thomas Megas* filed by SECURITIES AND EXCHANGE COMMISSION.Memorandum, Declaration. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Exhibit 1-2)(SCARLATO, MATTHEW) (Entered: 10/15/2020) |
| 10/16/2020 | 14 | ORDER THAT THE MOTION FOR AN EXTENSION OF TIME TO SERVE THOMAS MEGAS (DOC. NO. 13 ) IS GRANTED. THE PLAINTIFF SHALL HAVE UNTIL DECEMBER 14, 2020 TO EFFECT PROPER SERVICE ON THOMAS MEGAS. SIGNED BY HONORABLE EDWARD G. SMITH ON 10/16/20.10/16/20 ENTERED AND COPIES NOT MAILED TO UNREP AND E-MAILED.(mas, ) (Entered: 10/16/2020) |
| 12/14/2020 | 15 | MOTION for Service *To Authorize Alternative Service Or, Alternatively, To Grant An Extension of Time To Serve Defendant Thomas Megas* filed by SECURITIES AND EXCHANGE COMMISSION.Memorandum, Declaration. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Exhibit 1-11)(SCARLATO, MATTHEW) (Entered: 12/14/2020) |
| 12/14/2020 | 16 | ORDER THAT THE COURT WILL HOLD A TELEPHONE CONFERENCE ON THE RECORD WITH THE PLAINTIFFS COUNSEL ON WEDNESDAY, DECEMBER 16, 2020, AT 1:00 P.M. COUNSEL FOR THE PLAINTIFF SHALL CALL 1-571-353-2300 AND USE PIN 363973916# TO ENTER THE CONFERENCE CALL. SIGNED BY HONORABLE EDWARD G. SMITH ON 12/14/20. 12/14/20 ENTERED AND COPIES NOT MAILED TO UNREP AND E-MAILED.(mas, ) (Entered: 12/14/2020) |
| 12/17/2020 | 17 | Proposed Order *Re Motion for Alternative Service, or, Alternatively, for an extension of time to serve Defendant Thomas Megas* by SECURITIES AND EXCHANGE COMMISSION. (SCARLATO, MATTHEW) Modified on 12/18/2020 (tjd). (Entered: 12/17/2020) |
| 12/17/2020 | 18 | ORDER THAT MOTION TO AUTHORIZE ALTERNATIVE SERVICE, OR, ALTERNATIVELY, TO GRANT AN EXTENSION OF TIME TO SERVE DEFENDANT THOMAS MEGAS (DOC. 15), AND HAVING FOUND GOOD CAUSE TO GRANT THE REQUESTED RELIEF, IS GRANTED. SIGNED BY HONORABLE EDWARD G. SMITH ON 12/17/20.12/17/20 ENTERED AND |

**47**

| | | |
|---|---|---|
| | | COPIES E-MAILED.(er, ) (Entered: 12/17/2020) |
| 01/06/2021 | | Summons and Complaint mailed abroad to Defendant Thomas Megas at 3 known addresses via Federal Express. 1st Address Norland Square Mansions, 53 Norland Square, London LO W11 4PY, Tracking #772433207067, 2nd Savoy House, Savoy Circus, London LO W7DA, Tracking #772433289571, 3rd 15 Onslow Gardens, London LO SW73AW, Tracking #772433323088. (nd, ) (Entered: 01/06/2021) |
| 01/07/2021 | 19 | Letter to the Court dated 1/5/2021 For Service Pursuant to Rule 4(f)(c)(ii) by SECURITIES AND EXCHANGE COMMISSION. (SCARLATO, MATTHEW) Modified on 1/11/2021 (tjd). (Entered: 01/07/2021) |
| 01/26/2021 | 20 | Letter to the Court dated 1/26/2021 For Service Pursuant to Rule 4(f)(2)(C)(ii) by SECURITIES AND EXCHANGE COMMISSION. (SCARLATO, MATTHEW) Modified on 1/28/2021 (tjd). (Entered: 01/26/2021) |
| 01/28/2021 | | Summons and Complaint mailed abroad to Defendant Thomas Megas at 3 known addresses via Federal Express. 1st Address Norland Square Mansions, 53 Norland Square, London LO W11 4PY, Tracking #7727 1514 0143, 2nd Savoy House, Savoy Circus, London LO W3 7DA, Tracking #7727 1518 1165, 3rd 15 Onslow Gardens, London LO SW7 3AW, Tracking #7727 1524 6762. (ke) (Entered: 01/28/2021) |
| 03/02/2021 | 21 | ORDER THAT THE COURT WILL HOLD A TELEPHONE STATUS CONFERENCE WITH COUNSEL FOR THE PLAINTIFF ON MONDAY, MARCH 8, 2021, AT 10:30 A.M., ETC. SIGNED BY HONORABLE EDWARD G. SMITH ON 3/2/21. 3/2/21 ENTERED AND COPIES (NOT MAILED TO UNREP), E-MAILED.(er, ) (Entered: 03/02/2021) |
| 03/02/2021 | | COPY OF DOC. NO. 21 HAS BEEN MAILED TO UNREP. PARTY. (bw, ) (Entered: 03/02/2021) |
| 04/29/2021 | 22 | Request for Default SECURITIES AND EXCHANGE COMMISSION against THOMAS MEGAS. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2)(SCARLATO, MATTHEW) (Entered: 04/29/2021) |
| 04/29/2021 | | DEFAULT BY THOMAS MEGAS FOR FAILURE TO APPEAR, PLEAD OR OTHERWISE DEFEND. (jaa, ) (Entered: 04/29/2021) |
| 04/29/2021 | | Default Entered (jaa, ) (Entered: 04/29/2021) |
| 06/15/2021 | 23 | ORDER THAT THE COURT WILL HOLD A TELEPHONE CONFERENCE WITH COUNSEL FOR THE PLAINTIFF ON THURSDAY, JUNE 17, 2021, AT 10:30 A.M., ETC. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/15/21. 6/15/21 ENTERED AND COPIES COPIES (NOT MAILED TO UNREP) E-MAILED.(er, ) Modified on 6/15/2021 (er, ). (Entered: 06/15/2021) |
| 06/16/2021 | | PLEADING #23 MAILED TO UNREP (JL ) (Entered: 06/16/2021) |
| 07/20/2021 | 24 | MOTION for Default Judgment against Thomas Megas filed by SECURITIES AND EXCHANGE COMMISSION.Memorandum, Declaration. (Attachments: # 1 Memorandum, # 2 Declaration of Matthew Scarlato, # 3 Exhibit 1 to 7, # 4 Declaration of Donato Furlano, # 5 Text of Proposed Order)(SCARLATO, MATTHEW) (Entered: 07/20/2021) |
| 07/21/2021 | 25 | ORDER THAT THE COURT WILL HOLD A HEARING BY TELEPHONE ON THE MOTION FOR DEFAULT JUDGMENT (DOC. NO. 24 ) ON FRIDAY, JULY 30, 2021, AT 10:00 A.M. COUNSEL SHALL CALL 1-571-353-2300 AND USE PIN |

| | | |
|---|---|---|
| | | 363973916# TO ENTER THE CONFERENCE CALL. IT IS FURTHER ORDERED THAT COUNSEL FOR THE SECURITY EXCHANGE COMMISSION SHALL SERVE THIS ORDER UPON MR. MEGAS VIA AN EMAIL TO MR. MEGASS LAST KNOWN EMAIL ADDRESS AND SUBMIT A VERIFICATION OF SERVICE PRIOR TO THE HEARING. SIGNED BY HONORABLE EDWARD G. SMITH ON 7/21/21. 7/21/21 ENTERED AND COPIES E-MAILED.(mas, ) Modified on 7/21/2021 (mas, ). (Entered: 07/21/2021) |
| 07/26/2021 | 26 | NOTICE by SECURITIES AND EXCHANGE COMMISSION re 25 Order,,, Set Motion and R&R Deadlines/Hearings,, (SCARLATO, MATTHEW) (Entered: 07/26/2021) |
| 07/30/2021 | 27 | ORDER THAT THE COMMISSIONS 24 MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT MEGAS IS GRANTED. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT DEFENDANT IS PERMANENTLY RESTRAINED AND ENJOINED FROM VIOLATING, DIRECTLY OR INDIRECTLY, SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934 (THE EXCHANGE ACT) [15 U.S.C. § 78J(B)] AND RULE 10B-5 PROMULGATED THEREUNDER [17 C.F.R. § 240.10B-5], BY USING ANY MEANS OR INSTRUMENTALITY OF INTERSTATE COMMERCE, OR OF THE MAILS, OR OF ANY FACILITY OF ANY NATIONAL SECURITIES EXCHANGE, IN CONNECTION WITH THE PURCHASE OR SALE OF ANY SECURITY:; ETC. AS HEREIN. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT THIS COURT SHALL RETAIN JURISDICTION OF THIS MATTER FOR THE PURPOSES OF ENFORCING THE TERMS OF THIS FINAL JUDGMENT; ETC. AS HEREIN. IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED THAT DEFENDANT IS LIABLE FOR DISGORGEMENT OF $30,755, REPRESENTING NET PROFITS GAINED AS A RESULT OF THE CONDUCT ALLEGED IN THE COMPLAINT, TOGETHER WITH PREJUDGMENT INTEREST THEREON IN THE AMOUNT OF $8,719, AND A CIVIL PENALTY IN THE AMOUNT OF $487,500 PURSUANT TO SECTION 20(D) OF THE SECURITIES ACT [15 U.S.C. § 77T(D)] AND SECTION 21(D)(3) OF THE EXCHANGE ACT [15 U.S.C. §78U(D)(3)]. DEFENDANT SHALL SATISFY THIS OBLIGATION BY PAYING $526,974, TO THE SECURITIES AND EXCHANGE COMMISSION WITHIN 30 DAYS AFTER ENTRY OF THIS FINAL JUDGMENT; ETC. AS HEREIN. SIGNED BY HONORABLE EDWARD G. SMITH ON 7/30/21.7/30/21 ENTERED AND COPIES NOT MAILED TO UNREP AND E-MAILED.(mas, ) (Entered: 07/30/2021) |
| 07/30/2021 | 28 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. Motion Hearing held on 7/30/21. Re: 24 MOTION for Default Judgment. Court Reporter: ESR. (mas, ) (Entered: 07/30/2021) |
| 08/05/2021 | | Copy of 27 Order mailed to Unrep. (mas, ) (Entered: 08/05/2021) |
| 08/05/2021 | 29 | DEFENDANT THOMAS MEGAS MOTION THE COURT TO DISMISS THE DEFAULT JUDGEMENT AGAINST HIM ENTERED ON 30TH JULY 2021 FILED BY THOMAS MEGAS. (mas, ) (Entered: 08/05/2021) |
| 08/10/2021 | 30 | ORDER THE PLAINTIFF SHALL FILE ANY RESPONSE IN OPPOSITION TO THE MOTION (DOC. NO. 29) BY AUGUST 24, 2021. THE COURT WILL HOLD A HEARING ON THE MOTION TO STRIKE DEFAULT JUDGMENT ON FRIDAY, SEPTEMBER 10, 2021, AT 10:00 A.M. AT THE HOLMES BUILDING, 101 LARRY HOLMES DRIVE, 4TH FLOOR, EASTON, PENNSYLVANIA 18042. SIGNED BY |

**49**

| | | |
|---|---|---|
| | | HONORABLE EDWARD G. SMITH ON 8/10/21. 8/10/21 ENTERED AND COPIES MAILED TO UNREP, E-MAILED.(er, ) (Entered: 08/10/2021) |
| 08/18/2021 | 31 | REQUEST TO RECONSIDER DENIAL OF REQUEST FOR TELEPHONE/VIDEO HEARING FOR HEARING SCHEDULED FOR 10 SEPTEMBER 2021 AT 10 AM TO CONSIDER MOTION TO DISMISS DEFAULT JUDGEMENT AGAINST THOMAS MEGAS ON 30 JULY 2021 AND TO CITE EXPLANATION FOR REQUESTING A PHYSICAL HEARING by THOMAS MEGAS. (Attachments: # 1 EMAIL)(jaa, ) (Entered: 08/19/2021) |
| 08/24/2021 | 32 | RESPONSE in Opposition re 29 MOTION for Order filed by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Declaration of Matthew Scarlato, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Text of Proposed Order)(SCARLATO, MATTHEW) (Entered: 08/24/2021) |
| 08/29/2021 | 33 | THOMAS MEGAS RESPONSE TO PLAINTIFF`S RESPONSE TO THE MOTION BY THOMAS MEGAS TO DISMISS THE DEFAULT JUDGEMENT by THOMAS MEGAS. (Attachments: # 1 EMAIL) (jaa, ) (Entered: 08/30/2021) |
| 08/30/2021 | 34 | Supplemental RESPONSE to Motion re 29 MOTION for Order filed by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Declaration, # 2 Exhibit 15, # 3 Exhibit 16)(SCARLATO, MATTHEW) Modified on 9/1/2021 (tjd). (Entered: 08/30/2021) |
| 09/01/2021 | 35 | RESPONSE TO RESPONSE DOCUMENT 34 FILED BY SEC by THOMAS MEGAS. (Attachments: # 1 EMAIL) (jaa, ) (Entered: 09/01/2021) |
| 09/03/2021 | 36 | ORDER OF 9/3/21 THAT AFTER CONSIDERING THE PRO SE DEFENDANT'S REQUEST TO RECONSIDER THE COURT'S DENIAL A HEARING VIA TELEPHONE OR VIDEO CONFERENCE (DOC.NO. 31), IT IS HEREBY ORDERED AS FOLLOWS: THE DEFENDANT'S REQUEST TO CONDUCT THE HEARING TELEPHONICALLY (DOC.NO. 31) IS DENIED. AND THE COURT'S HEARING ON SEPTEMBER 10, 2021 AT 10:00AM WILL BE HELD IN PERSON. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 9/31/21.9/3/21 ENTERED AND COPIES EMAILED. (dt, ) (Entered: 09/03/2021) |
| 09/03/2021 | 38 | NOTICE: INABILITY TO ATTEND COURT HEARING by THOMAS MEGAS (Attachments: # 1 EMAIL)(jaa, ) (Entered: 09/07/2021) |
| 09/05/2021 | 37 | DEFENDANT THOMAS MEGAS MOTION THE COURT TO DISMISS THE DEFAULT JUDGEMENT AGAINST HIM ENTERED ON 30TH JULY 2021 filed by THOMAS MEGAS. (Attachments: # 1 EMAIL)(jaa, ) (Entered: 09/07/2021) |
| 09/08/2021 | 39 | NOTICE OF COMMENCEMENT OF CRIMINAL PROCEEDINGS AGAINST THE SECURITIES EXCHANGE COMMISSION AND MATTHEW SCARLATO by THOMAS MEGAS (Attachments: # 1 EMAIL)(jaa, ) (Entered: 09/09/2021) |
| 09/09/2021 | 40 | ORDER THAT THE EVIDENTIARY HEARING CURRENTLY SCHEDULED FOR FRIDAY, SEPTEMBER 10, 2021, AT 10:00 A.M IS RESCHEDULED TO FRIDAY, OCTOBER 8, 2021 AT 1:00 P.M. AT THE HOLMES BUILDING, 101 LARRY HOLMES DRIVE, 4TH FLOOR, EASTON, PA 18042, ETC. SIGNED BY HONORABLE EDWARD G. SMITH ON 9/9/21. 9/9/21 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 09/09/2021) |

**50**

| 09/22/2021 | 41 | ORDER THAT THE EVIDENTIARY HEARING CURRENTLY SCHEDULED FOR FRIDAY, OCTOBER 8, 2021, AT 1:00 P.M. IS RESCHEDULED TO THURSDAY, OCTOBER 28, 2021, AT 3:30 P.M. AT THE HOLMES BUILDING, 101 LARRY HOLMES DRIVE, 4TH FLOOR, EASTON, PA 18042. SIGNED BY HONORABLE EDWARD G. SMITH ON 9/22/21. 9/22/21 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 09/22/2021) |
|---|---|---|
| 09/28/2021 | 42 | REQUEST FOR TELEPHONE CONFERENCE FOR HEARING MOTION TO DISMISS by THOMAS MEGAS. (Attachments: # 1 EMAIL)(jaa, ) (Entered: 09/28/2021) |
| 10/19/2021 | 43 | ORDER THAT THE DEFENDANT'S REQUEST TO CONDUCT THE HEARING TELEPHONICALLY (DOC. NO. {42}) IS DENIED. THE COURT'S HEARING ON THURSDAY, OCTOBER 28, 2021, AT 3:00 P.M. WILL BE HELD IN PERSON AT THE HOLMES BUILDING, 101 LARRY HOLMES DRIVE, 4TH FLOOR, EASTON, PENNSYLVANIA 18042. SIGNED BY HONORABLE EDWARD G. SMITH ON 10/19/21. 10/19/21 ENTERED AND COPIES E-MAILED.(mas, ) (Entered: 10/19/2021) |
| 10/27/2021 | 44 | AFFIDAVIT by THOMAS MEGAS. (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit, # 4 Affidavit, # 5 Affidavit, # 6 Affidavit)(jaa, ) (Entered: 10/27/2021) |
| 10/27/2021 | 45 | (VACATED BY 47 ORDER OF THE COURT) ORDER THAT THE 29 MOTION FOR ORDER IS DENIED. SIGNED BY HONORABLE EDWARD G. SMITH ON 10/27/21.10/27/21 ENTERED AND COPIES E-MAILED.(mas, ) Modified on 10/29/2021 (mas, ). (Entered: 10/27/2021) |
| 10/28/2021 | 46 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH: Motion Hearing held on 10/28/21. Re: MOTION to Dismiss filed by THOMAS MEGAS. Defendant Thomas Megas was not present for the hearing. Phone and email attempts were made. The Court will reschedule today's hearing. Order to follow. Court Reporter: esr. (er, ) (Entered: 10/28/2021) |
| 10/29/2021 | 47 | ORDER THAT THE COURT WILL HOLD A RESCHEDULED HEARING BY TELEPHONE ON THE 37 MOTION TO STRIKE DEFAULT JUDGMENT ON WEDNESDAY, NOVEMBER 10, 2021, AT 3:00 P.M. THE DEFENDANT AND COUNSEL FOR THE PLAINTIFF SHALL CALL 1-571-353-2300 AND USE PIN 363973916# TO ENTER THE CONFERENCE CALL; THE COURTS ORDER DENYING THE MOTION FOR RECUSAL OF THE UNDERSIGNED FILED BY THE DEFENDANT THOMAS MEGAS (DOC. NO. 45 ), ENTERED ON OCTOBER 27, 2021, IS VACATED IN ORDER TO GIVE THE DEFENDANT AN OPPORTUNITY TO BE HEARD ON THE MOTION AT THE ABOVE DATE AND TIME; AND IF THE DEFENDANT FAILS TO PARTICIPATE IN THE TELEPHONE HEARING, HIS MOTION MAY BE DENIED FOR FAILURE TO PROSECUTE. SIGNED BY HONORABLE EDWARD G. SMITH ON 10/29/21. 10/29/21 ENTERED AND COPIES E-MAILED.(mas, ) (Entered: 10/29/2021) |
| 11/08/2021 | 48 | Letter dated 11/8/21 by THOMAS MEGAS (Attachments: # 1 EMAIL)(jaa, ) (Entered: 11/08/2021) |
| 11/10/2021 | 49 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH Motion Hearing held on 11/10/21 re 37 MOTION to Dismiss filed by THOMAS MEGAS Court Reporter: ESR. (dt, ) (Entered: 11/12/2021) |

**51**

| | | |
|---|---|---|
| 11/10/2021 | 50 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. Motion Hearing held on 11/10/21. Re: 37 MOTION to Dismiss filed by THOMAS MEGAS. Court Reporter: ESR. **(DUPLICATE ENTRY)** (mas, ) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 51 | ORDER OF 11/12/21 THAT AFTER A HEARING ON THE MOTION TO STRIKE THE DEFAULT JUDGMENT FILED BY THE DEFENDANT, THOMAS MEGAS (DOC.NO. 37), IT IS HEREBY ORDERED AS FOLLOWS: THE DEFENDANT SHALL HAVE UNTIL DECEMBER 10, 2021 TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO STRIKE THE DEFAULT JUDGMENT AND IN SUPPORT OF HIS MOTION FOR RECUSAL OF THE UNDERSIGNED; THE PLAINTFF SHALL HAVE UNTIL JANUARY 10, 2022 TO FILE A RESPONSE IN OPPOSITION TO THE DEFENDANT'S SUPPLEMENTAL BRIEF; AND THE COURT WILL HOLD AN ORAL ARGUMENT VIA TELEPHONE ON THIS MATTER ON THURSDAY, JANUARY 20, 2022 AT 9:30AM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 11/12/21. 11/12/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 11/12/2021) |
| 12/10/2021 | 52 | BRIEF by THOMAS MEGAS. (Attachments: # 1 DOCUMENT, # 2 DOCUMENT, # 3 DOCUMENT, # 4 DOCUMENT, # 5 DOCUMENT, # 6 DOCUMENT, # 7 DOCUMENT, # 8 DOCUMENT, # 9 EMAIL) (jaa, ) (Entered: 12/13/2021) |
| 12/10/2021 | 53 | BRIEF by THOMAS MEGAS. (Attachments: # 1 DOCUMENT #2, # 2 DOCUMENT #3, # 3 DOCUMENT #4, # 4 DOCUMENT #5, # 5 DOCUMENT #6, # 6 DOCUMENT #7, # 7 DOCUMENT #8, # 8 DOCUMENT #9, # 9 DOCUMENT #10, # 10 EMAIL) (jaa, ) (Entered: 12/13/2021) |
| 12/10/2021 | 54 | BRIEF by THOMAS MEGAS. (Attachments: # 1 DOCUMENT #2, # 2 DOCUMENT #3, # 3 DOCUMENT #4, # 4 DOCUMENT #5, # 5 DOCUMENT #6, # 6 DOCUMENT #7, # 7 DOCUMENT #8, # 8 DOCUMENT #9, # 9 DOCUMENT #10, # 10 DOCUMENT #11, # 11 DOCUMENT #12, # 12 DOCUMENT #13, # 13 DOCUMENT #14, # 14 DOCUMENT #15, # 15 DOCUMENT #16, # 16 DOCUMENT #17, # 17 DOCUMENT #18, # 18 DOCUMENT #19, # 19 DOCUMENT #20, # 20 DOCUMENT #21, # 21 DOCUMENT #22, # 22 DOCUMENT #23, # 23 DOCUMENT #24, # 24 EMAIL) (jaa, ) (Entered: 12/13/2021) |
| 12/16/2021 | 55 | TRANSCRIPT of EVIDENTIARY HEARING held on 11/10/21, before Judge HONORABLE EDWARD G. SMITH. Court Reporter: JENNIFER J. FITZKO. Transcriber: NEAL R. GROSS. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 1/6/2022. Redacted Transcript Deadline set for 1/16/2022. Release of Transcript Restriction set for 3/16/2022. (jaa, ) (Entered: 12/16/2021) |
| 12/16/2021 | 56 | Notice of Filing of Official Transcript with Certificate of Service re 55 Transcript - PDF,, 12/16/21 Entered and Copies Emailed. (jaa, ) (Entered: 12/16/2021) |
| 01/10/2022 | 57 | RESPONSE in Opposition re 37 MOTION to Dismiss filed by SECURITIES AND EXCHANGE COMMISSION. (SCARLATO, MATTHEW) (Entered: 01/10/2022) |
| 01/18/2022 | 58 | DEFENDANT'S RESPONSE by THOMAS MEGAS. (Attachments: # 1 EMAIL) (jaa, ) (Entered: 01/18/2022) |

| | | |
|---|---|---|
| 01/20/2022 | 59 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. Motion Hearing held on 1/20/22 re 37 MOTION to Dismiss filed by THOMAS MEGAS. Court Reporter: ESR. (mas, ) (Entered: 01/20/2022) |
| 07/20/2022 | 60 | MEMORANDUM OPINION. SIGNED BY HONORABLE EDWARD G. SMITH ON 7/20/22. 7/20/22 ENTERED AND COPIES E-MAILED.(mas) (Entered: 07/20/2022) |
| 07/20/2022 | 61 | ORDER THAT THE DEFENDANTS MOTION TO DISMISS THE DEFAULT JUDGMENT (DOC. NOS. 29 , 37 ) IS DENIED. SIGNED BY HONORABLE EDWARD G. SMITH ON 7/20/22. 7/20/22 ENTERED AND COPIES E-MAILED.(mas) (Entered: 07/20/2022) |
| 08/12/2022 | 62 | NOTICE OF APPEAL by THOMAS MEGAS. Copies to Judge, Clerk USCA, Appeals Clerk. NO IFP, NO FEE PAID. (Attachments: # 1 EMAIL)(sg) (Entered: 08/12/2022) |
| 08/15/2022 | 63 | NOTICE of Docketing Record on Appeal from USCA re 62 Notice of Appeal filed by THOMAS MEGAS. USCA Case Number 22-2497 (sg) (Entered: 08/15/2022) |
| 08/19/2022 | 64 | NOTICE OF APPEAL by THOMAS MEGAS. Copies to Judge, Clerk USCA, Appeals Clerk and *NO IFP OR FEE FILING. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(jaa, ) (Additional attachment(s) added on 8/22/2022: # 9 EMAIL) (jaa, ). (Entered: 08/19/2022) |
| 08/30/2022 | 65 | Filing fee: $ 505, receipt number 20001650 (jaa, ) (Entered: 08/30/2022) |
| 10/20/2022 | 66 | TPO Form re 64 Notice of Appeal, : (sg) (Entered: 10/20/2022) |
| 11/18/2022 | 67 | TRANSCRIPT of ORAL ARGUMENT, held on 1/20/2022, before Judge EDWARD G. SMITH. Court Reporter/Transcriber NEAL R. GROSS. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 12/9/2022. Redacted Transcript Deadline set for 12/19/2022. Release of Transcript Restriction set for 2/16/2023. (sg) (Entered: 11/18/2022) |
| 11/18/2022 | 68 | Notice of Filing of Official Transcript with Certificate of Service re 67 Transcript - PDF, 11/18/2022 Entered and Copies Emailed. (sg) (Entered: 11/18/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/14/2023 14:35:32 | | |
| **PACER Login:** | Lantagne92 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:20-cv-01593-EGS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

**53**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

TODD LAHR, and
THOMAS MEGAS,

Defendants.

No. 5:20-cv-1593

COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint

against Defendants Todd Lahr ("Lahr") and Thomas Megas ("Megas"), alleges as follows:

SUMMARY OF ALLEGATIONS

1.      For the better part of three years ending in 2017, Lahr and Megas knowingly

orchestrated and operated an offering fraud and Ponzi scheme, through which they sold over a

million dollars in unregistered securities consisting of promissory notes in THL Holdings LLC

("THL Holdings") and common stock and warrants in Ferran Global Holdings, Inc. ("Ferran").

Through the offer and sale of these unregistered securities, Lahr and Megas obtained over $1.4

million from at least ten investors since August 2014.  Lahr and, at times, Megas used over

**54**

$400,000 those investor funds to pay earlier investors in a classic "Ponzi"[1] scheme, and Lahr and Megas misappropriated over $130,000 for personal expenses and for expenses unrelated to THL Holdings' and Ferran's purported investments.

2.      By engaging in the conduct described in this Complaint, Lahr and Megas violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a) & (c), Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and unless restrained and enjoined will engage in further violations of these provisions.

3.      The Commission respectfully requests, among other things, that the Court enjoin Defendants from committing further violations of the Federal securities laws as alleged in this Complaint, and order Defendants to pay disgorgement, plus prejudgment interest, civil penalties, and other appropriate and necessary equitable relief.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant Sections 21(d), 21(e), and 27(a) of the Exchange Act, 15 U.S.C. §§78u(d)-(e) & 78aa(a), and Sections 20(b)-(d) and 22(a), of the Securities Act, 15 U.S.C. §§ 77t(b)-(d) & 77v(a).

5.      Venue is proper in the Eastern District of Pennsylvania pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

---

[1]      "A 'Ponzi' scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments.  Typically, investors are promised large returns for their investments.  Initial investors are actually paid the promised returns, which attract additional investors." *In re Hedged-Investments Assocs., Inc.*, 48 F.3d 470, n.2 (10th Cir. 1995) (citing *In re Independent Clearing House Co.*, 41 B.R. 985, 994 n.12 (Bankr. D. Utah 1984)).

**55**

Lahr resides and maintains a law practice in this District and conducted many of the acts, transactions, practices, and courses of business constituting the unlawful conduct alleged in this Complaint from this District.  Lahr solicited investors in this District and other States, including the Commonwealth of Virginia, to invest in Ferran and THL Holdings.  In furtherance of the unlawful activity alleged in this Complaint, Megas took numerous trips to the United States.  In 2015, for example, Megas attended several meetings in New York City with potential investment bankers in New York to discuss Ferran-related fundraising.  In addition, on or about April 24, 2015, Lahr and Megas met with an individual in Miami, Florida, to discuss Ferran-related fundraising.  Megas also received numerous wires from Ferran's bank account in the United States and sent numerous wires to THL Holdings' bank accounts in the United States in furtherance of the unlawful conduct alleged in this Complaint.  Megas' unlawful conduct abroad had a foreseeable substantial effect within the United States because the fraudulent acts involved the solicitation of and contribution of significant amounts of money from investors in the United States, and included at least one securities filing that he made to the Commission.

6.      Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or of the mails, including the use of email, telephone, and the internet in connection with illegal acts alleged in this Complaint, certain of which occurred within this District.

7.      On May 31, 2019, Lahr and the Commission entered into a tolling agreement that tolled the statute of limitations related to this Complaint from April 15, 2019, to April 15, 2020.

### DEFENDANTS AND RELATED ENTITIES

8.      **Todd H. Lahr**, 59, is a resident of Nazareth, Pennsylvania.  He is an attorney licensed to practice law in the Commonwealth of Pennsylvania since 1987, and he maintains an

**56**

estate law practice in Allenton, Pennsylvania. From 2008 to 2010, Lahr was registered with the Commission as an investment adviser representative. He incorporated THL Holdings, served as its President, sole Managing Member, and Operating Manager, and had sole signature authority over its bank account. He also co-founded Ferran with Megas. Lahr served as Ferran's President and Director, and he was a signatory on its bank account.

9. **Thomas P. Megas**, 77, is a British national and resident of Verbier, Switzerland. Megas co-founded Ferran with Lahr. Megas served as Ferran's CEO, Treasurer, and Chairman of the Board of Directors, was a signatory on its bank account as of June 25, 2015, and made at least one Commission filing on Ferran's behalf.

10. **THL Holdings, LLC** ("THL Holdings") is a private Nevada limited liability company that Lahr formed on January 11, 2012, with a registered agent address in Sparks, Nevada. THL Holdings was never registered with the Commission in any capacity and has never filed a registration statement for its securities with the Commission. Throughout the relevant period, Lahr had sole signatory authority over THL Holdings' bank accounts, which were in the United States.

11. **Ferran Global Holdings, Inc.** ("Ferran") is a private Nevada corporation formed on January 13, 2015, with a registered agent address in Sparks, Nevada. Ferran was never registered with the Commission in any capacity and has never filed a registration statement for its securities with the Commission. Ferran's business license expired on January 31, 2017. In March 2015, Lahr opened a bank account for Ferran in the United States. He was its only signatory until June 25, 2015, when Lahr added Megas as a signatory on the account.

**57**

## FACTS

I.     **From 2012 to 2014, Lahr Sold Over $1.4 Million In Unregistered THL Holdings Securities And Misappropriated Investor Funds**

12.    Starting in or around January 2012, Lahr began soliciting investors to purchase security interests in a company he formed called THL Holdings.  He primarily solicited friends and clients of his local law practice, many of whom were located in this District.

13.    When soliciting investors, Lahr orally represented to them that he was raising money for THL Holdings to invest in several Megas-led business ventures, including a United States-based company called Bancorp International Group ("BCIT"), mining operations through a Canadian company called Meekom National Resources Ltd. ("Meekom"), and mining operations in Bougainville, Papua New Guinea, through a company called Cefeida S.A. ("Cefeida").  Lahr represented to investors that he would invest all of their funds with THL Holdings and in support of the Megas-led businesses.  Lahr never disclosed to investors that he or Megas would take any fees, commissions, or use investor money for personal expenses.

14.    Lahr sold two types of investments in THL Holdings.  First, for most investors, Lahr sold promissory notes with premium interest rates, typically 10 percent, in which THL Holdings agreed to make monthly interest payments until the loan matured, which was typically after five years.

15.    Second, in a few instances, Lahr sold equity interests in THL Holdings in the form of membership units.  These membership units were investments in a common enterprise where investors were led to expect profits solely from THL Holdings' efforts in the Megas-led industries.

16.    Between January 2012 and August 2014, Lahr sold approximately $1.4 million of these unregistered securities to at least 20 investors in THL Holdings.  Of these sales, Lahr raised

$50,000 after April 15, 2014, from one investor who purchased a promissory note in THL Holdings on or about August 1, 2014, based on the same representations Lahr made to the other THL Holdings investors at the time.

17.     Although Lahr represented to investors that he would use their funds to invest in various Megas-led business ventures domestically and abroad, THL Holdings never received any return on these purported investments.  Instead, Lahr misappropriated new investor funds to make the promised monthly interest payments to earlier THL Holdings investors in a fraudulent Ponzi scheme, and further misappropriated investor funds to pay a variety of his personal expenses.

18.     From February 2012 through 2014, Lahr made over $194,000 in Ponzi payments to existing THL Holdings investors using new THL Holdings investor funds.  Lahr made approximately $66,666 of these payments after April 15, 2014.  Lahr never disclosed to investors that he was using new investor money to make interest payments to earlier investors, or that he was not investing their money in the THL Holdings business enterprise as he had represented.

19.     In addition, Lahr misappropriated investor funds to pay personal expenses.  From 2012 to 2014, Lahr spent at least $13,000 in THL Holdings investor funds for his personal use, including to pay his home mortgage, his daughter's tuition payments, and his personal credit card bills.  Lahr spent at least $12,000 of these personal expenses after April 15, 2014.  When making these payments, Lahr knew, was reckless in not knowing, or should have known that he was misappropriating THL Holdings investor funds.

20.     From November 2012 to September 2014, Lahr wired over $294,000 in THL Holdings investor funds to a personal bank account in Australia solely owned and controlled by Megas ("Megas Account").  During this time, Megas commingled the THL Holdings investor

funds with funds from other sources into the Megas Account and used these commingled funds to pay for at least $24,000 in personal expenses, including for ski lift tickets, car maintenance, tuition, and hair salon visits.

21.     During this time period, Lahr discussed with Megas on several occasions the stress Lahr felt from "borrowing" THL Holdings investor funds to "invest" in Megas-led enterprises and having to pay the promised monthly interest on the THL Holdings promissory notes.  For example, on February 14, 2013, Lahr lamented to Megas by email that Lahr was having "sleepless nights over the last year just because of all the funds I have invested here.  At the present time I [am] spending over $60,000 per year just on the interest charge on money I have borrowed."

## II.     In 2015, Lahr And Megas Sold Unregistered Ferran Securities To Generate Cash To Make Promised Interest Payments To THL Holdings Investors

22.     As of February 1, 2015, THL Holdings' bank account had only approximately $13,000 remaining after Lahr made the Ponzi payments to THL Holdings investors in January 2015.  In February 2015, Lahr solicited his parents to invest $16,000 in THL Holdings in exchange for a promissory note that guaranteed a 10 percent interest rate.

23.     Even with his parents' money, Lahr knew that THL Holdings would default on its monthly interest payments to investors in the next few months if he did not raise more money.  To address this liquidity crisis, Lahr and Megas established Ferran to raise money to help Lahr make the interest payments owed to THL Holdings investors.

24.     Lahr incorporated Ferran in the State of Nevada on January 13, 2015.  He served as its President and Director, and Megas was its CEO, Treasurer, and Chairman of the Board of Directors.

25. Starting in or around February 2015, Lahr and Megas began working on a business plan and a prospectus for a private offering of Ferran stock and warrants.

26. Before raising funds from investors, Lahr discussed with Megas his plan to use Ferran money to repay THL Holdings investors. On March 24, 2015, Lahr informed Megas via email that Lahr was soliciting investors for Ferran, and Lahr stated, "I am reaching out to everyone I can at this point since it is vital for us to get funds. I have never been in such a tight cash crunch situation as I am right now."

27. On or about April 10, 2015, Lahr solicited four investors for Ferran. Three of these Ferran investors had previously invested in THL Holdings, and at least one of these investors decided to invest in Ferran at least in part because she had received monthly Ponzi payments from THL Holdings since 2013. The fourth investor was another client of Lahr's law practice.

28. When soliciting these investors, Lahr represented that he was raising money for Ferran to invest in one or more Megas-led business ventures that involved mining operations in Papua New Guinea, and/or real estate ventures in London, England, and/or Barcelona, Spain. Lahr did not inform Ferran's investors that their funds would be used for any other purpose, including, for fees, commissions, interest payments to THL Holdings investors, or the personal expenses of Lahr or Megas.

29. Ferran's four investors signed subscription agreements to purchase Ferran securities for $0.10 per share, and warrants to purchase an additional 50 percent of the shares they had purchased at the same price, for a total investment of $140,000.

30. Between April 10 and April 13, 2015, Lahr deposited the $140,000 in investor proceeds into Ferran's bank account.

31. On April 21, 2015, Megas, on behalf of Ferran, filed a Form D "Notice of Exempt Offering of Securities" with the Commission. Ferran's Form D claimed that Ferran was engaging in a $2 million offering, that it had already raised $140,000 selling equity and options to four accredited investors, and there were $1.86 million of securities remaining to be sold. Ferran's Form D claimed that the offering was exempt from registration with the Commission pursuant to Rule 506(b), 17 C.F.R. § 230.506(b). It further claimed that there were no sales commissions or finders' fees related to the offering, and that Ferran would use none of the proceeds of the offering to pay any officer, director, or promoter of Ferran.

32. By this time, Lahr had made clear to Megas that Lahr needed the Ferran investor funds to make promised interest payments to THL Holdings investors. On April 18, 2015, Lahr emailed Megas to discuss an upcoming Ferran-related trip to Miami with Megas, and Lahr stated, "I was happy I was able to at least raise this $140,000 for [Ferran] . . . This trip [to Miami] has totally tapped me out of what money I had left in [THL Holdings] so we have to raise a lot of capital and in a hurry. The time is now for us to get things rolling in a big way."

III. **Lahr And Megas Fraudulently Misappropriated Ferran Investor Funds**

33. Almost immediately after securing the $140,000, Lahr and Megas began fraudulently misappropriating Ferran investor funds.

34. Between May and September 2015, Lahr and, at times, Megas transferred approximately $45,000 of Ferran investor funds to THL Holdings to make Ponzi payments to THL Holdings investors.

35. Lahr and Megas engaged in two deceptive round-trip transactions amongst themselves to transfer Ferran investor funds to THL Holdings investors. In both transactions, Lahr sent Ferran investor funds to the Megas Account and, within days, Megas returned half of

9

**62**

those funds to THL Holdings' account, and then Lahr used those funds to make Ponzi payments to THL Holdings investors.

36.     In the first round-trip transaction, on May 4, 2015, Lahr transferred $40,000 of Ferran investor funds to the Megas Account.  Megas knew, was reckless in not knowing, or should have known that the $40,000 transfer consisted of Ferran investor funds because his account statements represented that the funds were transferred from a Ferran account, and Lahr had informed Megas by email on April 29, 2015, that the $40,000 wire transfer consisted of Ferran investor funds.

37.     At the time, the Megas Account contained approximately $2,350, which consisted almost entirely of THL Holdings investor funds that Lahr sent Megas on April 20, 2015.

38.     Rather than using the funds for Ferran's purported businesses, Megas misappropriated $20,000 of the Ferran investor funds to further the THL Holdings Ponzi scheme. Within three days of receiving these Ferran funds, between May 7 and 11, 2015, Megas sent three wire transfers totaling $20,000 from the Megas Account to THL Holdings' bank account. Megas had no legitimate business reason to send Ferran investor funds to THL Holdings.

39.     Lahr, in turn, used these misappropriated Ferran investor funds to make Ponzi payments to THL Holdings investors.  From May 27 to May 29, 2015, Lahr used over $8,000 of the $20,000 of the Ferran investor funds that Megas had sent to THL Holdings' bank account for these Ponzi payments.  From June 28 to June 30, 2015, Lahr again used another over $8,000 of this Ferran investor money to make interest payments to THL Holdings investors.

40.     By May 20, 2015, Megas had almost entirely depleted the $40,000 of the Ferran investor funds that he received.  By this time, Megas had also misappropriated over $2,100 on

**63**

personal expenses such as clothing, cash withdrawals from ATMs in Switzerland, and on meals at restaurants in Switzerland.

41.     Despite receiving $20,000 in Ferran investor money from Megas to pay THL Holdings investors in May 2015, within a matter of weeks Lahr informed Megas by email that he needed more money to satisfy outstanding interest payments to THL Holdings investors in the coming months.  In an email to Megas on May 29, 2015, Lahr cautioned that THL Holdings only had enough money to make such interest payments in June and July 2015, and "after that unless we raise more money I will be completely out of funds with no money to make monthly payments to the Noteholders that provided the funds that I put into this endeavor."

42.     To address Lahr's liquidity crisis at THL Holdings, in July 2015, Lahr and Megas again fraudulently misappropriated Ferran investor funds to continue the THL Holdings Ponzi scheme.

43.     In a second round-trip transaction, on July 21, 2015, Lahr wired a total of $20,000 in Ferran investor funds to the Megas Account.  Megas knew, was reckless in not knowing, or should have known that the $20,000 in transfers consisted of Ferran investor funds because Megas' account statements represented that the funds were transferred from a Ferran account. The Ferran investor funds were commingled in the Megas Account with approximately $21,000 in funds received from unknown sources during this period.  In about six weeks, by September 10, 2015, Megas had depleted this account to approximately $50.

44.     Soon after receiving the $20,000 of Ferran investor money from Lahr, Megas again fraudulently misappropriated approximately half of those funds by sending them back to THL Holdings.  On July 23 and 27, 2015, Megas sent two wire transfers totaling $10,000 in

11

Ferran investor funds from the Megas Account to THL Holdings' bank account.  Megas had no legitimate business reason to send Ferran investor funds to THL Holdings.

45.     By July 1, 2015, THL Holdings' account contained less than $4,000, which would not cover the upcoming monthly payments that THL Holdings owed its investors.  The only money that THL Holdings received in July 2015 was the $10,000 from Megas.  Starting the day after Megas' last transfer, from July 28 to 30, 2015, Lahr made over $8,000 in Ponzi payments to THL Holdings investors.

46.     In addition to the above transfers, Lahr sent Megas $2,000 in Ferran investor funds on June 19, 2015.  After that time, Megas again began using the commingled funds in the Megas Account for personal use.  Between June 30 and September 8, 2015, Megas spent at least $9,000 from the commingled funds in the Megas Account on personal expenses, including a vacation in the Dominican Republic, medical bills, and ATM withdrawals and restaurants in Switzerland.

47.     Lahr also misappropriated Ferran investor funds on two other occasions.  First, on July 6, 2015, Lahr misappropriated $2,000 of Ferran investor funds by transferring the money from Ferran's bank account to a bank account of Onslow Holdings, Inc. ("Onslow"), a company in which Megas was an officer.  Onslow used the money for business expenses unrelated to Ferran's purported business ventures.

48.     Second, on August 24, 2015, Lahr withdrew $15,000 in investor funds from Ferran's bank account, and deposited the funds directly into THL Holdings' bank account.  Lahr had no legitimate business reason to transfer Ferran investor funds to THL Holdings.  Instead, Lahr used these Ferran investor funds to make Ponzi payments to THL Holdings investors in

**65**

August and September 2015.  THL Holdings' bank account received no other funds during this time.

49.    By October 1, 2015, Megas and Lahr had spent almost all of the Ferran investor funds:  THL Holdings' bank account contained less than $2,000, and Ferran's bank accounts contained less than $5,000.

50.    In making the transfers of investor funds alleged above, Lahr knew, was reckless in not knowing, or should have known that he was misappropriating Ferran investor funds to make Ponzi payments to THL Holdings investors and for other expenses unrelated to Ferran. Lahr managed Ferran's bank account and knew that the only source of money into that account was from Ferran's investors.  Lahr did not disclose these facts to Ferran or THL Holdings investors.

51.    Lahr also managed THL Holdings' bank account, and he knew, was reckless in not knowing, or should have known that its only significant money sources were from funds received from THL Holdings or Ferran investors.  Yet Lahr used these funds to make Ponzi payments to THL Holdings investors.

52.    Megas knew, was reckless in not knowing, or should have known that he was misappropriating Ferran investor funds by sending them to THL Holdings to be used for Ponzi payments and by using them for personal expenses – contrary to the representations Megas had made in the April 21, 2015 Form D that Megas filed with the Commission.  Further, throughout this period, Lahr repeatedly made clear to Megas that Lahr needed Ferran investor funds to continue the THL Holdings Ponzi scheme, including via emails on March 24 and April 18, 2015.

53.    Alternatively, Megas aided and abetted Lahr's fraudulent Ponzi scheme.  By the time Lahr and Megas founded Ferran, Lahr operated THL Holdings as a fraudulent Ponzi

13

**66**

scheme that was using new THL Holdings investor funds to make Ponzi payments to earlier investors. By at least March 2015, Megas knew, or was reckless in not knowing, that Lahr had accumulated significant debts to THL Holdings investors by selling promissory notes, that Lahr had been making Ponzi payments to THL Holdings investors using other investor funds, and that Lahr planned to continue making these fraudulent Ponzi payments using Ferran investor funds.

54.     From at least May through August 2015, Megas knowingly or recklessly substantially assisted and participated in Lahr's fraudulent scheme. During this time, Megas sent $30,000 of Ferran investor funds to THL Holdings through round-trip transactions to enable Lahr to continue making fraudulent Ponzi payments to THL Holdings investors when Megas knew, or was reckless in not knowing, that Lahr would use the money for that purpose. Lahr could not have continued his unlawful conduct without the Ferran investor funds that Megas sent to THL Holdings.

**IV.**   **By November 2015, After Lahr And Megas Had Depleted Ferran Investor Funds, Lahr Resumed Fraudulently Selling Unregistered THL Holdings Securities To Continue The Ponzi Scheme**

55.     By November 1, 2015, THL Holdings' bank account contained less than $2,000, and Ferran's bank account contained less than $4,000. Again in need of cash to continue making payments to THL Holdings investors, Lahr decided to solicit many of these same investors to purchase new THL Holdings promissory notes.

56.     On or around November 1, 2015, Lahr solicited a married couple who had previously invested $65,000 in THL Holdings ("Married Couple A"). Their prior investments included a $50,000 promissory note on which Lahr had made monthly Ponzi payments since 2013.

**67**

57.     Lahr represented to Married Couple A that he would invest their money in THL Holdings' business ventures, and he guaranteed that Married Couple A would receive a 10 percent annual return on their investment.  He never disclosed that he would take any fees, commissions, or use investor money for personal expenses.

58.     On November 5, 2015, based on Lahr's representations, Married Couple A invested another $120,000 with THL Holdings in return for a promissory note.  On November 5, 2015, Lahr deposited their $120,000 check to THL Holdings' bank account.  At the time, THL Holdings' bank account contained only approximately $1,700.

59.     Contrary to Lahr's representations to Married Couple A, on November 25, 2015, Lahr fraudulently misappropriated THL Holdings investor funds, including funds from Married Couple A, to pay over $65,000 in personal credit card bills.  He never disclosed this fact to Married Couple A or other THL Holdings investors.

60.     Just prior to misappropriating Married Couple A's money, Lahr again made clear to Megas that Lahr was raising cash to continue the Ponzi scheme.  On November 20, 2015, Lahr emailed Megas and noted, "The $140,000 I raised for FERRAN is nearly gone . . . . At this point I have a lot of work to do just to keep my head above water.  There is no one I can turn to and ask for a huge wire of funds.  I have to work hard so FERRAN is [a] success and I can get out of this strangle hold of debt.  Each month that goes by costs me over $10,000 in interest payments alone on just the money I put into our endeavor.  I have other personal debt that more than doubles that in monthly interest expenses and since most of my time has been spent here doing this for the past 4 years I have not been earning a lot of money from other sources."

61.     By June 2016, THL Holdings' bank account again lacked sufficient funds to make promised monthly investor payments.  Around this time, Lahr solicited additional investments in

THL Holdings from prior investors and their family members.  He solicited:  (1) a prior equity investor in both THL Holdings and Ferran ("Equity Investor A"); (2) Equity Investor A's parents ("Equity Investors A's Parents"); and (3) a married couple who had invested in THL Holdings promissory notes and had been receiving monthly Ponzi payments since 2012 ("Married Couple B").

62.     Lahr represented to Equity Investor A, Equity Investors A's Parents, and Married Couple B that he would invest their money in THL Holdings' business ventures and guaranteed that these investors would receive a 10 percent annual return on their investment.  He never disclosed to these investors that he would take any fees, commissions, or use investor money for personal expenses.

63.     Based on Lahr's representations, Equity Investor A, Equity Investor A's Parents, and Married Couple B invested a total of $335,000 in THL Holdings in exchange for promissory notes.  Between June 13 and 27, 2016, Lahr deposited the $335,000 in THL Holdings' bank account.  At the time, THL Holdings' bank account had only approximately $4,000 from other sources.

64.     From June to September 2016, Lahr continued to make over $45,000 in Ponzi payments to THL Holdings investors using the newly raised THL Holdings investor funds.

65.     On or around October 1, 2016, Lahr sold another $800,000 promissory note to Equity Investor A's Parents.  By this time, Equity Investor A's Parents had received over $6,600 in monthly Ponzi payments on their earlier promissory note.

66.     Equity Investor A's Parents invested the $800,000 based on Lahr's representations that he would invest their money in THL Holdings' business ventures and that they would receive a 10 percent guaranteed annual rate of return on their investment.  Lahr

16

**69**

represented to Equity Investor A that he would invest all of their funds in THL Holdings' business ventures. He never disclosed to investors that he would take any fees, commissions, or use investor money for personal expenses.

67. On October 14, 2016, Lahr deposited two checks totaling $800,000 into THL Holdings' bank account.

68. From October 2016 until May 2017, Lahr fraudulently made approximately $140,000 in Ponzi payments to earlier THL Holdings investors with the newly obtained THL Holdings investor funds from Equity Investor A's Parents. During this time, THL Holdings' bank account received only approximately $7,000 from other sources.

69. In addition, on December 28, 2016, Lahr fraudulently misappropriated $50,000 of THL Holdings investor funds to repay a Ferran investor who complained to Lahr about the lack of returns on his investment. No other Ferran investors received any return on their investments.

70. By May 2017, THL Holdings started running out of money again, but this time, Lahr was unable to raise any additional funds. In all, THL Holdings investors lost over $2 million.

71. Lahr knew, was reckless in not knowing, or should have known that he was fraudulently misappropriating THL Holdings investor funds to make Ponzi payments to THL Holdings investors, to repay a Ferran investor, and to pay personal expenses.

V. **Lahr And Megas Illegally Conducted Unregistered Offers And Sales Of Securities**

A. **Lahr Directly And Indirectly Conducted Unregistered Offers And Sales Of THL Holdings Securities**

72. Lahr directly and indirectly conducted unregistered offers and sales of THL Holdings securities. From at least January 2012 to October 2016, Lahr offered and sold equity

interests in THL Holdings in the form of membership units and THL Holdings promissory notes. Lahr personally solicited all of THL Holdings investors in person and by email.

73.     From at least January 2012 to October 2016, Lahr raised over $2.6 million through the unregistered sale of these THL Holdings securities.  Lahr signed the promissory notes and membership certificates on behalf of THL Holdings.

74.     Some THL Holdings investors were unsophisticated and did not qualify as "accredited" investors pursuant to Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), including Married Couple A, and Lahr never provided these investors with the information concerning THL Holdings that is required pursuant to Rule 502(b)(2) of Regulation D, 17 C.F.R. § 230.502(b)(2).

75.     The promissory notes that Lahr sold on behalf of THL Holdings constituted "securities" pursuant to Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(1).  Lahr solicited the sale of these promissory notes to over 20 investors in several States to fund THL Holdings' business investments, and the investors' expectations were that they would receive premium rates of return based on the profits generated by that business.

76.     In addition, the membership units and promissory notes Lahr sold in THL Holdings were investment contracts because they constituted an investment in THL Holdings, a common enterprise, where Lahr led investors to expect profits solely from the entity's efforts in various business ventures in, among other things, the mining industry.

77.     There was no registration statement on file or in effect for the THL Holdings notes or membership interests, and no exemption from the requirements of the Securities Act applied.

**71**

**B.      Lahr And Megas Directly And Indirectly Conducted Unregistered Offers and Sales of Ferran Securities**

78.      Starting on or about April 2015, Lahr and Megas began directly and indirectly conducting unregistered offers and sales of Ferran securities.  Together, they owned and controlled all aspects of Ferran's business, including directing its securities' offers and sales and control over its bank accounts.

79.      Lahr solicited Ferran's four investors in person and through email by discussing the Ferran business plan that he and Megas had developed.  At the time, Megas knew that Lahr was soliciting investors based on their jointly developed business plan.

80.      In April 2015, Lahr and Megas sold 1.4 million shares of Ferran securities and warrants for an additional 700,000 shares of Ferran stock for $140,000.  Lahr signed, on behalf of Ferran, the subscription agreements for investors to purchase the shares.

81.      At least one of Ferran's investors was unsophisticated and did not qualify as an "accredited" investor pursuant to Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), and Lahr never provided this investor with the information concerning Ferran that is required pursuant to Rule 502(b)(2) of Regulation D, 17 C.F.R. § 230.502(b)(2).

82.      In furtherance of the offer and sale, on April 21, 2015, Megas electronically filed a Form D with the Commission on behalf of Ferran that disclosed to the Commission that Ferran was engaging in an offering up to $2 million in securities, which included the $140,000 of securities it had already sold.

83.      There was no registration statement on file or in effect for these sales of Ferran securities, and no exemption from the Securities Act applied.

84.     Lahr and Megas collected $140,000 from the unregistered sale of Ferran securities.  Of these sales proceeds, Lahr sent Megas $62,000 from Ferran's bank account to the Megas Account via several bank wire transfers.

85.     After April 2015, Lahr and Megas had several meetings with investment bankers in the United States to discuss additional fundraising related to the Ferran offering.

86.     Megas drafted the descriptions of Ferran's business objectives and financial projections used in Ferran's business plan and private placement memorandum ("PPM") for this offering.  The business plan was completed in June 2015 and the PPM in November 2015. Megas and Lahr sent Ferran's PPM to investment bankers by email as part of their discussions related to the Ferran stock offering.

87.     Megas was also the primary drafter and web administrator of Ferran's public website, which included a general offer and solicitation of Ferran securities.  Ferran's website claimed, among other things, that Ferran "pursue[s] shareholder value creation through strategic acquisitions and management of unique, high-return business opportunities."  The website further stated, "This is how we create value for our shareholders," and it described several purported business ventures, including real estate in London, England and Barcelona, Spain, and mining assets in Bougainville, Papua New Guinea.  The website provided a phone number and permitted visitors to send messages to Ferran directly from the website.

88.     On or around June 18, 2015, Megas and Lahr directed that Ferran's website be published onto the public internet.  That day, Lahr emailed Ferran's investors to encourage them to review the website.

89.     Lahr and Megas also controlled Ferran's offer and sale of securities.  Lahr and Megas served as regular contacts with Ferran's transfer agent.  Both had the authority to direct

the transfer agent to issue shares.  On May 27, 2015, Lahr directed Ferran's transfer agent by email to issue shares to its four investors.  That same day, Megas directed Ferran's transfer agent by email to issue shares to himself, Lahr, and THL Holdings, and on November 11, 2015, Megas directed Ferran's transfer agent to decrease the number of shares Ferran had issued to him.

90.     Megas and Lahr were the only Ferran officers and directors authorized to sign stock certificates, and both provided Ferran's transfer agent by email with a "specimen" signature for the transfer agent to affix to any stock certificate Ferran issued to investors.

### FIRST CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5(a) & (c) Thereunder**
(Against Defendants)

91.     Paragraphs 1 through 90 are re-alleged and incorporated by reference herein.

92.     By engaging in the conduct alleged in this Complaint, specifically by misappropriating investor funds, Defendants, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

93.     By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & (c).

### SECOND CLAIM FOR RELIEF

**Aiding and Abetting Violations of Exchange Act
Section 10(b) and Rule 10b-5(a) & (c) Thereunder**
(Against Megas)

94.     Paragraphs 1 through 90 are re-alleged and incorporated by reference herein.

**74**

95.     By engaging in the conduct alleged in this Complaint, specifically by misappropriating investor funds, Lahr, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

96.     Since at least March 2015, Megas knew, or was reckless in not knowing, that Lahr was engaged in the unlawful conduct alleged in this Complaint, and he knowingly or recklessly substantially assisted and participated in the wrongdoing.  Megas provided substantial assistance to Lahr and substantially participated in the fraud by providing Ferran investor money to THL Holdings, which Megas knew, or was reckless in not knowing, Lahr would use to make fraudulent Ponzi payments to THL Holdings investors.

97.     By reason of the foregoing, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. 78t(e), Megas aided and abetted Lahr's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & (c).

## THIRD CLAIM FOR RELIEF

### Violations of Securities Act Sections 17(a)(1) & (3)
(Against Defendants)

98.     Paragraphs 1 through 90 are re-alleged and incorporated by reference herein.

99.     By engaging in the conduct alleged in this Complaint, specifically by misappropriating investor funds, Defendants, directly or indirectly, in connection with the offer or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange and acting with the requisite degree of knowledge or state of mind, employed devices, schemes, or artifices to defraud and engaged in

transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

100. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and (3) of the Securities Act,15 U.S.C. §§ 77q(a)(1) & (3).

## FOURTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Securities Act Sections 17(a)(1) & (3)**
(Against Megas)

101. Paragraphs 1 through 90 are re-alleged and incorporated by reference herein.

102. By engaging in the conduct alleged in this Complaint, specifically by misappropriating investor funds, Lahr, directly or indirectly, in connection with the offer or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange and acting with the requisite degree of knowledge or state of mind employed devices, schemes, or artifices to defraud and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

103. Since at least March 2015, Megas knew, or was reckless in not knowing, that Lahr was engaged in the unlawful conduct alleged in this Complaint, and he knowingly or recklessly substantially assisted and participated in the wrongdoing. Megas provided substantial assistance to Lahr and participated in the fraud by providing Ferran investor money to THL Holdings, which Megas knew, or was reckless in not knowing, that Lahr would use to make fraudulent Ponzi payments to THL Holdings investors.

**76**

104.     By reason of the foregoing, pursuant to Section 15(b) of the Securities Act, 15 U.S.C. 77o(b), Megas aided and abetted Lahr's violations of Sections 17(a)(1) and (3) of the Securities Act,15 U.S.C. §§ 77q(a)(1) & (3).

## FIFTH CLAIM FOR RELIEF

### Violations of Securities Act Sections 5(a) & (c)
(Against Defendants)

105.     Paragraphs 1 through 90 are re-alleged and incorporated by reference herein.

106.     Defendants, directly or indirectly, through the means or instruments of transportation or communication in interstate commerce or of the mails, offered and sold common stock and warrants in Ferran to investors.  These products are securities, but they were not registered in accordance with the provisions of the Securities Act, and no exemption from registration was applicable.

107.     Lahr, directly and directly, through the means or instruments of transportation or communication in interstate commerce or of the mails, offered and sold THL Holdings promissory notes and membership units to investors.  These products are securities, but they were not registered in accordance with the provisions of the Securities Act, and no exemption from registration was applicable.

108.     By engaging in the foregoing conduct, Defendants violated, and unless enjoined will continue to violate, Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a)&(c).

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

Permanently enjoin Defendants from violating the Federal securities laws alleged in this Complaint.

**77**

## II.

Order Defendants to disgorge the ill-gotten gains obtained as a result of the conduct alleged in this Complaint, with prejudgment interest.

## III.

Order Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## IV.

Grant such further relief as the Court may deem just and appropriate.

## <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated:  March 24, 2020

Respectfully submitted,

s/ Matthew Scarlato
Matthew Scarlato*
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC  20549
Direct:  (202) 551-3749
Email: scarlatom@sec.gov

*Appearing pursuant to Local Civil
  Rule 83.5(e)

OF COUNSEL:

Jonathan Shapiro
Sonia G. Torrico
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC  20549

*Attorneys for Plaintiff*

**79**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>   Plaintiff,<br><br>   v.<br><br>TODD LAHR, and THOMAS MEGAS,<br><br>   Defendants. | No. 5:20-cv-1593 |

I, Matthew Scarlato, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a Trial Attorney with the Securities and Exchange Commission ("Commission").  I am counsel of record for the Commission in case.  I am making this Declaration in support of the Commission's motion for an extension of time to serve Defendant Thomas Megas.  I make these statements based upon my personal knowledge, information, and belief.

2.    Upon filing this case, the Commission was aware that Defendant Megas resided in Switzerland, at Route de Corberaye 18A Le Chable / Villette 1934.

3.    On April 8, 2020, after completing the necessary translations into French, I sent a request to the Swiss authorities pursuant to the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") requesting that they serve Defendant Megas with the summons and Complaint in this case at his known address.  A true and correct copy of the Commission's Hague Convention request is attached hereto as Exhibit 1.

1

**80**

4.      On May 18, 2020, I received a letter from the Swiss authorities concerning the

Commission's Hague Request.   A true and correct copy of that letter, which is dated April 27,

2020, is attached hereto as Exhibit 2.


I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Executed this 18th day of June, 2020, in Washington, D.C.




                                        s/ Matthew Scarlato
                                        Matthew Scarlato

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

    v.                                    No. 5:20-cv-1593-EGS

TODD LAHR, and
THOMAS MEGAS,

          Defendants.

I, Matthew Scarlato, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Trial Attorney with the Securities and Exchange Commission ("Commission"). I am counsel of record for the Commission in case. I am making this Declaration in support of the Commission's Motion to authorize alternative service, or, alternatively, to grant an extension of time to serve Defendant Thomas Megas. I make these statements based upon my personal knowledge, information, and belief.

2. Upon filing this case, the Commission had substantial evidence that Megas was a British citizen, but that he resided in Switzerland, at Route de Corberaye 18A Le Chable / Villette 1934.[1] This was based primarily upon documents and other evidence the Commission obtained in the course of a multi-year investigation that preceded this litigation, including Megas' personal bank records that were dated as recently as March 2019.

---

[1] The Commission had conflicting information as to whether the address was "18A" or "18C," but the Swiss authorities ultimately confirmed the address was "18C" and attempted service at that address.

1

3.      On April 8, 2020, after completing the necessary translations into French, I sent a request to the Swiss authorities pursuant to the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") requesting that they serve Defendant Megas with the summons and Complaint in this case at his known address.  A true and correct copy of the Commission's Hague Convention request is attached hereto as Exhibit 1.

4.      On May 18, 2020, I received a letter from the Swiss authorities concerning the Commission's Hague Convention request.   A true and correct copy of that letter, which is dated April 27, 2020, is attached hereto as Exhibit 2.  That letter attached an April 22, 2020 letter from the Swiss local police that was written in French, and a true and correct copy of a certified translation of the April 22, 2020 letter into English is attached hereto as Exhibit 3.

5.      On September 29, 2020, the Swiss authorities informed Commission staff that the local police had made several efforts in September 2020 to effect service upon Megas at his known address, but they were unsuccessful.  The local police also tried contacting him again by phone, but he did not answer.  They further confirmed that they did not know if Megas was in Switzerland.

6.      After additional communication between Commission staff and the Swiss authorities, on October 8, 2020, a Swiss representative informed Commission staff that it would make one more effort to serve Megas on October 11, 2020.  The Swiss representative further noted that the Swiss authorities did not know where Megas was located because no one has been at Megas' home address, he does not answer his phone, and that Megas had not been seen in the area.

2

**83**

7.      On October 13, 2020, the Swiss representative informed Commission staff that they were again unable to serve Megas on October 11, 2020, and that the Swiss authorities were going to return the Commission's Hague Convention request without effecting personal service upon Megas.

8.      On October 23, 2020, Commission staff sent its counterpart in Switzerland, the Swiss Financial Market Supervisory Authority ("FINMA"), a request for Megas' known addresses in Switzerland, Megas' travel records, known telephone numbers and email addresses, and any other information that might inform us as to Megas' current whereabouts.  In a letter dated November 20, 2020, FINMA responded to the SEC's request.  A true and correct copy of that letter is attached hereto as Exhibit 4.

9.      Since the Court's October 16, 2020 order, Commission staff conducted other factual inquiries to determine Megas' whereabouts.  Commission staff submitted a request to the United States Department of Homeland of Security, and confirmed that Megas had not recently traveled to or from the United States.  In addition, Commission staff ran searches of various United States Government databases and contacted several of Megas' known contacts in the United States, including Defendant Todd Lahr, but did not obtain sufficient information to locate Megas.

10.     In addition, Commission staff conducted public internet research and discovered that Megas was registered as a director with several companies in the United Kingdom.  A true and correct copy of the list of companies that I obtained by searching Megas' name in the United Kingdom Companies House database is attached hereto as Exhibit 5, and true and correct copies of the incorporation records found in the United Kingdom Companies House database for the

3

two companies he incorporated in July 2019, Schneider Trading Limited and Schneider Energy Ltd., are attached hereto as Exhibits 6 and 7.

11.     Counsel for the Commission also obtained property records for the address Megas listed in the July 2019 incorporation filings, Norland Square Mansions, 53 Norland Square, London, United Kingdom W11 4PY.  A true and correct copy for the United Kingdom Land Registry records for this address is attached hereto as Exhibit 8.

12.     A true and correct copy of the list of officers of Slonecrest LLP in the United Kingdom that I obtained from a search of the United Kingdom Companies House database is attached hereto as Exhibit 9.

13.     In the course of the Commission's investigation, Commission staff learned that Megas frequently used the following email address:  tpm14@hotmail.com.  The most recent email the Commission is aware of that Megas sent from that address is from October 30, 2018, but the Commission also did not seek to collect more recent emails given the events at issue in the investigation preceded that time.

14.     On October 27, 2020, I sent Megas an email to tpm14@hotmail.com. A true and correct copy of that email is attached hereto as Exhibit 10.

15.     In sending my October 27, 2020 email to tpm14@hotmail.com, I utilized a technology platform called RPost that permits the email user to send certified electronic communications that provide proof of delivery and read receipts if the recipient opens the email. After sending the email, RPost generated an authenticated email receipt that showed that my email was successfully delivered to Megas' email address.  A true and correct copy of that authenticated email receipt is attached hereto as Exhibit 11.

**85**

16.     After sending the October 27, 2020 email to Megas, I did not receive a return message that the email was returned undelivered.  As of December 14, 2020, RPost has not sent a read receipt indicating that Megas opened my October 27, 2020 email, and Megas has not responded to it.

17.     Megas was aware of the Commission's investigation that preceded this litigation. In early 2017, he discussed it with Lahr, and Megas provided a written narrative to the Commission through Lahr in August 2017.  In addition, Megas knows about the related criminal action pending in this Court against Defendant  Lahr.  Commission staff recently learned through a record of an interview of a third party that Commission staff reviewed that indicated that, in April 2020, Megas called this third party and asked about the status of Lahr's related criminal case.

18.     In the Commission's experience, Hague Convention requests to the United Kingdom take from two to four months, and that there may be further delays due to the COVID-19 pandemic.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14 day of December, 2020, in Washington, D.C.

s/ Matthew Scarlato
Matthew Scarlato

5

**86**

# EXHIBIT

# 1

U.S. Department of Justice
United States Marshals Service



## REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou*
*extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Matthew Scarlato, Attorney<br>Securities and Exchange Commission ("SEC")<br>100 F Street, NE<br>Washington, DC 20549<br>Attorney has authority to make this request<br>pursuant to U.S. Fed Rule of Civil Proc. 4 | Tribunal cantonal Valais / Kantonsgericht Wallis<br>Palais de Justice / Justizgebäude<br>1950 Sion 2 |

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous*
*énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au*
*destinataire, à savoir:*
(identité et adresse)

Thomas Megas, Route de Corberaye 18A Le Chable / Villette 1934 Switzerland

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec*
*l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

1. Summons
2. Complaint

Done at Washington, DC       , the 8 April 2020
*Fait à*            , *le*

Signature and/or stamp
*Signature et/ou cachet*

---

*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

**88**

## CERTIFICATE
### *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
    -- the (date) -- *le (date)* _____
    -- at (place, street, number) - *à (localité, rue, numéro)*

                                          _____

    -- in one of the following methods authorized by article 5:
    -- *dans une des formes suivantes prévues à l'article 5:*

      ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
        *a) selon les formes légales (article 5. alinéa premier, lettre a)*

      ☐ (b) in accordance with the following particular method:
        *b) selon la forme particulière suivante:* _____

      ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
        *c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

    - (identity and description of person)
    - *(Identité et qualité de la personne)*

    _____

    - relationship to the addressee family, business or other
    - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

    _____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____

_____

_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____ , the _____
*Fait à* _____ , *le* _____

Signature and/or stamp
*Signature et/ou cachet*

**89**

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ÉLÉMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

### (article 5, fourth paragraph)
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

U.S. Securities and Exchange Commission ("SEC"), 100 F Street, NE, Washington, DC 20549

**Particulars of the parties:**
*Identité des parties:*

SEC is a U.S. Government agency.  Thomas Megas is former officer and director of a U.S. company.

### JUDICIAL DOCUMENT
*ACTE JUDICIA IRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

Complaint in a Federal court lawsuit alleging violations of U.S. securities laws and requests relief.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

SEC alleges that Megas violated the U.S. securities laws and seeks relief.

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

The answer should be filed with the Court within 21 days after service of the Complaint.

**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*

The Summons was issued by the U.S. District Court for the Eastern District of Pennsylvania.

**Dale of judgment**:**
*Date de la décision:*

The Summons is dated April 1, 2020.

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:*

Defendant's answer to the Complaint is due within 21 days after service of the Complaint.

### EXTRAJUDICIAL DOCUMENT
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:***
*Indication des délais figurant dans l'acte:*

**90**

# EXHIBIT

# 4



**Reference:**
G01316935

**Contact:**
Mouna Algelly
mouna.algelly@finma.ch
+41 (0)31 327 92 31

**Encl.:**
Attached

**Via encrypted e-mail**

U.S. Securities and Exchange Commission (SEC)
100 F Street NE
20549-1004 Washington DC

Bern, 20 November 2020

**Your request for international assistance in the matter of Ferran Global (HO-13180) – OIA Ref. No 2018-00283-008**

Dear Mrs Miller,

Reference is made to your request dated 23 October 2020 regarding the above-mentioned matter.

We hereby inform you of the following: the last known address of Mr. Tom Megas is Route de Corberaye 18C, 1934 Le Châble VS, valid since 20 December 2016. Please be informed that the competent authorities have confirmed that Mr. Megas is currently still registered at this address.

The telephone number associated with his former addresses is as follows: +41 27 771 40 74. There is no phone number associated with his current address. Unfortunately, we were unable to reach him at this number, as it is no longer in use.

According to the information we were able to retrieve, Mr. Tom Megas is active in the following entities: Swiss-Russian Cultural Foundation located in Bagnes VS (CHE-114.058.101) and Verbier Performing Arts (VPA) Association located in Bagnes VS (CHE-334.373.771). He was also active in the company March Promotion & Development SA located in Bagnes (CHE-110.036.454), currently in liquidation. For more information, please find enclosed the excerpts from the commercial register of the above-mentioned entities.

Finally, please note that we are not in a position to obtain Mr. Megas' travel records or any documents relating to his transit into and out of Switzerland.

We kindly ask you to treat the information transmitted to you confidentially according to the IOSCO Enhanced Multilateral Memorandum of Understanding concerning Consultation and Cooperation and the Exchange of Information (IOSCO EMMoU).

Laupenstrasse 27
3003 Bern
Phone +41 (0)31 327 91 00
**www.finma.ch**



**93**

According to Article 42 of the Swiss Federal Act on the Swiss Financial Market Supervisory Authority (FINMASA), this information may only be used for the purposes set out in the request and exclusively to implement financial market law, or be forwarded to other authorities, courts or bodies for these purposes.

The foreign authority may not forward information to other authorities, courts or bodies for purposes other than those mentioned above without the explicit prior consent of the Swiss Financial Market Supervisory Authority FINMA. We therefore ask you to request our consent prior to passing on this information and/or these documents to other authorities, courts or bodies within your jurisdiction or abroad for purposes other than those mentioned above.

Yours sincerely,

**Swiss Financial Market Supervisory Authority FINMA**
Enforcement division
International Cooperation

Dominik Leimgruber                Mouna Algelly

**Reference:**
G01316935

2/2

**93**



**CANTON DU VALAIS**
**KANTON WALLIS**

# Registre du commerce du Bas-Valais

| Numéro de registre | Nature juridique | Inscription | Radiation | Report de:<br>sur: | 1 |
|---|---|---|---|---|---|
| **CHE-114.058.101** | **Fondation** | 31.01.2008 | | | |

Toutes les inscriptions

| In | Ra | Nom | Réf | Siège |
|---|---|---|---|---|
| 1 | | **SWISS-RUSSIAN CULTURAL FOUNDATION** | 1 | Bagnes |

| In | Ra | Autorité de surveillance | In | Ra | Adresse |
|---|---|---|---|---|---|
| 5 | | Confédération Suisse par le Département fédéral de l'Intérieur, 3003 Berne | 1 | 8 | ~~Ch. du Scex 10~~<br>~~Chalet Russe~~<br>~~1936 Verbier~~ |
| | | | 8 | 9 | ~~Ch. du Scex 10~~<br>~~Case postale 248~~<br>~~1936 Verbier~~ |
| | | | 9 | | Route de Corberaye 18c<br>1934 Le Châble VS |

| In | Ra | But | In | Ra | Autres adresses |
|---|---|---|---|---|---|
| 1 | | développer la connaissance universelle des arts classiques russes, les promouvoir et les préserver par le biais de tout projet culturel considéré apte à ces fins (cf statuts) | | | |

| In | Ra | Observations, reprise de l'actif et du passif | Réf | Date des actes |
|---|---|---|---|---|
| 1 | 6 | ~~Organisation: Conseil de fondation de deux membres au moins et organe de révision~~ | 1 | 21.12.2007 |

| Réf | Journal | Date journal | FOSC | Date FOSC | Page / Id | Réf | Journal | Date journal | FOSC | Date FOSC | Page / Id |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 139 | 31.01.2008 | 25 | 06.02.2008 | 17 / 4324944 | 6 | 391 | 01.02.2012 | 25 | 06.02.2012 | 6536340 |
| 2 | 1090 | 16.07.2008 | 140 | 22.07.2008 | 20 / 4584138 | 7 | 1998 | 11.07.2012 | 136 | 16.07.2012 | 6770854 |
| 3 | 1666 | 05.11.2008 | 219 | 11.11.2008 | 16 / 4727522 | 8 | 1667 | 22.07.2014 | 142 | 25.07.2014 | 1634437 |
| 4 | 706 | 15.03.2010 | 55 | 19.03.2010 | 22 / 5550208 | 9 | 1298 | 07.04.2020 | 71 | 14.04.2020 | 1004870486 |
| 5 | 1544 | 29.06.2010 | 127 | 05.07.2010 | 28 / 5710162 | | | | | | |

| In | Mo | Ra | Indications personnelles | Fonction | Mode de signature |
|---|---|---|---|---|---|
| 1 | | 7 | ~~Edelman, Eugene, citoyen américain, à Beverly Hills (Californie/USA)~~ | ~~président~~ | ~~signature individuelle~~ |
| 1 | | 8 | ~~Lobanov-Rostovsky, Nikita D., citoyen américain, à Londres (GB)~~ | ~~vice-président~~ | ~~signature collective à deux~~ |
| 1 | | 4 | ~~Fragnière, Léonard, de Veysonnaz, à Sion~~ | ~~trésorier~~ | ~~signature collective à deux~~ |
| 1 | | 8m | ~~De Boccard, Philippe, de Genève, à Conches (Chêne Bougeries)~~ | ~~secrétaire~~ | ~~signature collective à deux~~ |
| 1 | | 8m | ~~Megas, Thomas, citoyen britannique, à Verbier (Bagnes)~~ | ~~membre~~ | ~~signature collective à deux~~ |
| 1 | | 2m | ~~Balakletts, Olga, citoyenne allemande, à Londres (GB)~~ | ~~membre~~ | ~~sans droit de signature~~ |
| 1 | | | 2C2F, CABINET DE CONSEIL FISCAL ET FIDUCIAIRE Sàrl à Collonge-Bellerive (CH-660.1.681.999-2) | organe de révision | |
| | 2 | 8 | ~~Balakleets, Olga, citoyenne allemande, à Londres (GB)~~ | ~~vice présidente~~ | ~~signature collective à deux~~ |
| 3 | | 8m | ~~Fetscherin, Walter, de Zürich, à Meilen~~ | ~~membre~~ | ~~signature collective à deux~~ |
| | 8 | | Megas, Thomas, citoyen britannique, à Verbier (Bagnes) | président | signature individuelle |
| | 8 | | Fetscherin, Walter, de Zürich, à Meilen | vice-président + directeur | sans droit de signature |
| | 8 | | De Boccard, Philippe, de Genève, à Conches (Chêne-Bougeries) | membre | sans droit de signature |
| | 8 | | Paez Palacios, Maria Alejandra, citoyenne vénézuélienne, à Bagnes | membre | signature collective à deux |
| | 8 | | Woolman, Alan, citoyen britannique, à Bagnes | membre + secrétaire | signature collective à deux |

Saint-Maurice, 26.10.2020 16:53

Les informations ci-dessus sont de nature purement informelle; elles sont fournies sans garantie et n'entraînent pas l'effet de publicité.

**94**



CANTON DU VALAIS
KANTON WALLIS

# Registre du commerce du Bas-Valais

| Identification number | Legal status | Entry | Cancelled | Carried from: on: | 1 |
|---|---|---|---|---|---|
| **CHE-110.036.454** | **Limited or Corporation** | 02.05.2003 | | | |

All data

| In | Ca | Business name | Ref | Legal seat |
|---|---|---|---|---|
| 1 | 6 | ~~MARCH PROMOTION & DEVELOPMENT SA~~ | 1 | Bagnes |
| 6 | | **MARCH PROMOTION & DEVELOPMENT SA en liquidation** | | |

| In | Ca | Share capital (CHF) | Paid in (CHF) | Shares | In | Ca | Company address |
|---|---|---|---|---|---|---|---|
| 1 | | 100'000.00 | 100'000.00 | 100 actions de CHF 1'000.00 au porteur | 1 | | Chalet Critze 1936 Verbier |

| In | Ca | Purpose | In | Ca | Other addresses |
|---|---|---|---|---|---|
| 1 | 4 | ~~gestion des intérêts financiers et commerciaux de diverses sociétés étrangères dans le domaine des courses automobiles et de l'immobilier à l'étranger, production et réalisation de films, commercialisation d'objets d'art, ainsi que toutes opérations commerciales, mobilières ou financières convergentes~~ | | | |
| 4 | | gestion des intérêts de diverses sociétés et fondations, notamment culturelles et sportives dans les domaines financier, commercial et événementiel (cf statuts) | | | |

| In | Ca | Remarks | Ref | Date of the acts |
|---|---|---|---|---|
| 4 | | Selon déclaration de renonciation des administrateurs du 04.09.2008, la société n'est pas soumise à une révision ordinaire et renonce à une révision restreinte | 1 | 25.03.2003 |
| 6 | | Par décision judiciaire du 13.10.2010 prononcée par le Tribunal de l'Entremont, cette société a été déclarée en état de faillite avec effet au même jour à 9h45 et dissoute d'office | 4 | 04.09.2008 |

| In | Ca | Qualified facts | Ref | Official publication |
|---|---|---|---|---|
| | | | 1 | FOSC |

| Ref | Journal | Date | SOGC | Date SOGC | Page / Id | Ref | Journal | Date | SOGC | Date SOGC | Page / Id |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 503 | 02.05.2003 | 88 | 09.05.2003 | 19 / 982602 | 4 | 1705 | 11.11.2008 | 223 | 17.11.2008 | 19 / 4735884 |
| 2 | 1438 | 17.12.2003 | 247 | 23.12.2003 | 21 / 2044766 | 5 | 887 | 08.04.2010 | 71 | 14.04.2010 | 19 / 5586442 |
| 3 | 1524 | 21.12.2006 | 252 | 29.12.2006 | 24 / 3702608 | 6 | KK 2351 | 15.10.2010 | KK 205 | 21.10.2010 | 16 / 5863230 |

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 1 | 2m | | ~~Woolman née Coquoz, Viviane, de Salvan et Vernayaz, à Verbier (Bagnes)~~ | ~~membre du conseil~~ | ~~single signature~~ |
| 1 | 2m | | ~~Megas, Thomas, citoyen britannique, à Verbier (Bagnes)~~ | ~~director~~ | ~~single signature~~ |
| 1 | | 3 | ~~Pierre Chapuis, à Bagnes~~ | ~~auditor~~ | |
| | 2 | 5 | ~~Woolman née Coquoz, Viviane, de Salvan et Vernayaz, à Verbier (Bagnes)~~ | ~~présidente du conseil~~ | ~~single signature~~ |
| | 2 | | Megas, Thomas, citoyen britannique, à Verbier (Bagnes) | member of the board of directors | single signature |
| 3 | | 4 | ~~Fimob Bureau Fiduciaire et Immobilier Bagnes S.A., à Bagnes~~ | ~~auditor~~ | |

Saint-Maurice, 19.11.2020 12:06

The above information is given without commitment and has not legal effect. Only the official company record (extract) issued and certified by the commercial register of Saint-Maurice (Valais) and published in the Swiss Commercial Gazette is legally binding.

# EXHIBIT

# 4

| From: | Scarlato, Matthew |
|---|---|
| To: | tpm14@hotmail.com |
| Subject: | Thomas Megas (Sent Registered) |
| Date: | Wednesday, February 10, 2021 5:21:23 PM |
| Attachments: | ECF 1 - Complaint.pdf |
| | Summons 20-cv-1593 to Thomas Megas.pdf |
| | ECF 18 - Order Granting Alt service and extension.pdf |

Mr. Megas:

My name is Matthew Scarlato. On March 24, 2020, I filed a civil lawsuit on behalf of the U.S. Securities and Exchange Commission ("SEC") against you and Todd Lahr for alleged violations of the U.S. Federal securities laws in the United States District Court for the Eastern District of Pennsylvania. The SEC recently obtained an order permitting us to serve you with the summons and Complaint in the case via this email address. These documents are attached. I have also attached the Court's order permitting this method of service.

In effecting service, you are obligated to respond to our Complaint within 21 days pursuant to Rule 12 of the Civil Rules of Civil Procedure.

Finally, please reply to confirm receipt of this email.

Thank you.

**Matthew F. Scarlato**

*Trial Attorney*

U.S. Securities & Exchange Commission

Division of Enforcement

100 F Street, NE

Mail Stop 5984

Washington, DC 20549

(202) 551-3749

# EXHIBIT

# 6

| | |
|---|---|
| **From:** | Tom M |
| **To:** | Scarlato, Matthew |
| **Subject:** | Automatic reply: Thomas Megas |
| **Date:** | Wednesday, February 10, 2021 5:23:13 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

AUTOMATED RESPONSE.

It has not been possible to deliver your message to tpm14@hotmail.com as the email address does not appear to be in use.

# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION     plaintiff

v

TODD LAHR and THOMAS MEGAS        defendant *(Pro Se)*

CASE NO 5:20-cv-1593-EGS

**Defendant Thomas Megas Motion the court to dismiss the default judgement against him entered on 30th July 2021.**

**I. Introduction**

1.  The Defendant Thomas Megas, a Swiss resident Motions the court to set aside the default judgement against him entered on 30th July 2021 and dismiss the case against him in its entirety because the plaintiff has failed to serve the defendant within the time period required by Rule 4(f) & 4(m) of Federal Rule of Civil Procedure.

2.  As no service was made, no response was due and the matters are now time barred.

3.  All the allegations are denied in the entirety

4.  The motions for time extensions, were bad faith filings and amounted to an abuse of process as the Plaintiff claimed that Megas could not be served as he was not at home.  However, at the time the world was in the grip, of the Coronavirus pandemic and Europe and Switzerland had closed its borders. People, including Megas were locked down in their homes.

5.  The default judgement is fatally flawed and is unenforceable because the court approved alternative methods of service  are not approved under The Hague convention and are not acceptable in Switzerland.

**100**

6.  The court erred in allowing these motions as it not only failed to take into consideration the Impact of the coronavirus pandemic but granted alternative methods of service which are not valid in Switzerland.

7.  Consequently, the time extension should not have been granted and the default judgement is moot as it is unenforceable against Megas in Switzerland.

8.  The case should be dismissed as it is time barred.

**II. Background**

9.  In February 2020 the world was at the start of the  coronavirus pandemic and European countries were closing their borders and imposing lockdowns.

10. On or about 13 March 2020 Switzerland, like almost every other European country closed its borders and imposed a lockdown.

11. 24 March 2020 Plaintiff filed the original complaint and pursuant to rule 4(f) of Federal Rules of Civil Procedure (FRCP) the Plaintiff had 90 days to serve the Defendant.

12. In the complaint The Plaintiff stated that "Megas resides abroad in Switzerland at an address known to the Commission" *See* Compl. ¶ 9, Doc. No. 1; Declaration of Matthew Scarlato ("Scarlato Dec.") ¶

13. On 1 April 2020, the Court issued the summonses against Defendants Lahr and Megas.

14. On 8 April 2020, after completing the necessary translations into French, the Commission apparently issued a service request to the Swiss authorities pursuant to

15. Article 5 of the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), requesting that they serve Megas at his known address.

16. 27 April 2020, the Swiss authorities sent a letter to Commission counsel which they apparently received on 18 May 18 2020 stating that their first attempt to serve Megas was unsuccessful because he was out of the country at the time, and that Megas was

**101**

expected to return at the end of August 2020. The letter further indicated that the Swiss authorities would attempt to serve Megas in September 2020 upon his return.

17. On 1 May 2020 Megas attended the police station at Le Chabal in Switzerland to see what they wanted but was not served. Megas visited police a total of three times, once again in late May and then In June, yet despite these efforts he was not served with the documents. see **EXHIBIT 1**

18. 18 June 2020 Matthew Scarlato counsel for SECURITIES AND EXCHANGE COMMISSION filed a MOTION FOR AN EXTENSION  OF TIME TO SERVE DEFENDANT Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff Securities and Exchange Commission (the "Commission") requesting that this Court grant the Commission an extension of time from 23 June 2020 to 15 October 2020, to serve Defendant Thomas Megas and on  the court granted the motion.

19. On 16 October 2020 a second motion by the Plaintiff requesting a further time extension was granted  until 14 December 2030

20. 17 December 2020 a third time extension for five months was granted expiring 28 May 2021, and the court also gave permission for the Plaintiff to use alternative methods of service by using his known email address tpm14@hotmail.com.

21. 29 April 2021 the Plaintiff requested an entry for default judgment against Megas

22. 20 July 2021 Plaintiff filed a motion for default judgement against Megas.

23. 30 July 2021 Final judgement in default against Megas was issued by the court.

**III. Discussion**

24. In applying Rule 55(c) and deciding whether to set aside an entry of default, the court applies a "standard of liberality and resolv[es] all doubts in favor of the defaulting party."

25. Metlife Capital Credit Corp.,1992 WL 3467772, at *2; In re Arthur Treacher's Franchise Litig., 92 F.R.D. 398, 415 (E.D.. Pa. 1981).

26. Rule 60 permits Relief from a Judgment or Order for the following reasons:
(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a

**102**

judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

(e) Bills and Writs Abolished. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

27. Pursuant to Rule 4(m)'s 90-day time limit, before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied and in this case this was not done.  As no legitimate service was made the Defendant was not under any duty to reply.

28. Rule 4 governs the content, issuance and service of a summons in a federal court action. Rule 4(m) provides that "if a defendant is not served with a summons within 90 days after the complaint is filed," the action must be dismissed against that defendant without prejudice or the court must order that service be made within a specified time, unless the plaintiff shows "good cause for the failure."

29. Rule 4(m) explicitly instructs the district court to provide additional time for service if there is good cause for a plaintiff's failure to effect service within the prescribed period. The burden is on the plaintiff to establish good cause.

**103**

30. Courts typically apply a two-step test when deciding whether to grant an extension of time to complete service. First, upon a showing of good cause, the court must extend the time period for service; and second, if no good cause is found, the court should decide whether to exercise its discretion to extend the time or instead dismiss the case without prejudice.

31. The Plaintiffs first Motion in June 2020 for a time  extension, did not show good cause and was fatally defective. In the memorandum in support of the Motion Matthew Scarlato counsel stated that Megas was not at home when the police tried to serve him.   This is simply not true and totally unfeasible because at the time the world was well into the grip of the coronavirus pandemic and virtually the whole world went into lockdown, and on or about 13 March 2020 Switzerland, like almost every other European country closed its borders and imposed a lockdown.  In short, almost everyone in Europe and Switzerland, including Megas were confined to their homes.

32. Megas was aware that the police had called at his address and on 1 May 2020 he attended the police station to see what they wanted but was not served. Megas visited police a total of three times, once again in late May and then In June, yet despite these efforts he was not served with the documents.

33. Several courts have identified factors to consider when determining whether to grant a discretionary extension of time instead of a dismissal. Of these factors, courts have placed emphasis on whether the statute of limitations would bar refiling of the action if it is dismissed.  That is the case here.

34. Rule 4(m) states that its 90-day time limit for service does not apply to service on an individual in a foreign country under Rule 4(f). Rule 4(f) allows for service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

35. The rationale for excluding international service of process from the 90-day time limit imposed by Rule 4(m) is that such international service of process generally requires compliance with the recognised methods of international service. The foreign country exception thus reflects the reality that the timeliness of foreign service is often out of the plaintiff's control, rendering the Rule 4(m) time limit too burdensome.

36. Although Rule 4(m)'s deadline for serving process within 90 days does not apply to service in a foreign country, that does not mean there is no time limit for such service.

**104**

37. When the foreign country exception to Rule 4(m)'s time limit applies, courts generally use a flexible due diligence standard to determine whether service of process was timely. The plaintiff bears the burden of proving that it exercised due diligence in attempting to serve the defendant which they did not do and the court should have identified that there was something wrong and that due to the pandemic and international lockdown Megas like everyone else could not go anywhere, and was probably at home.

38. In this analysis, the court assesses the reasonableness of the plaintiff's efforts and the prejudice incurred by defendants from any delay. Courts have observed that the "due diligence" standard under the foreign country exception and the "good cause" standard for delay in service of process under Rule 4(m) are practically the same.

39. Most circuit courts and district courts addressing the foreign country exception to Rule 4(m)'s time limit have recognised that under some circumstances, a court is entitled to dismiss a case if the plaintiff has failed to take reasonable steps to effectuate service on a foreign defendant.

40. There was no "due diligence" or " good cause" in this case and the court should have recognised that under the pandemic situation the plaintiffs agents had failed to take reasonable steps to effectuate service on a foreign defendant.  It is the plaintiff who has to effect service and it is not the Defendants fault he was not served and there is nothing in rule 4 FRCP that says the defendant has to actively  get himself served, although he did.

41. The first motion for a time extension on 18 June 2020 should never have been made and was an abuse of process.

42. Service by certified mail is insufficient to satisfy the plaintiff's burden in a motion to vacate a default judgment, according to the U.S. District Court for the Eastern District of Pennsylvania.

43. In Myers v. Moore, the district court granted the defendants' motion to vacate a default judgment because plaintiff failed to establish that they properly served the complaint on defendants or their authorised agents.

44. The court should vacate the default judgments under Federal Rule of Civil Procedure 60(b)(4) because

**105**

i) the Defendant was not properly served with the complaint.

ii) the judgment is void, because the court lacks personal jurisdiction because service was not proper under article 5 of The Hague Convention

45. The plaintiff obtained permission from the court to effect service via an email at address which is defunct.  There is no evidence that the email was read, but even if it was this method of service which falls under Article 10 of The Hague Convention is not permitted by Switzerland.

46. The Commission apparently provided evidence that an email had been sent to the Defendants email address but it had not been read.  In their motion for the default judgement the commission says a second email was returned because the address was not available. The Defendant has not received any emails to his current email account.

47. It is extremely difficult for the Plaintiff to prove that the defendant had actual knowledge, and the defendant submits that in this case the evidence submitted to the court by the Plaintiff fails to satisfy the required criteria.

48. The court should not have concluded that service was proper without sufficient evidence that the defendant or his authorized agent had actual been officially served.

49. The US Embassy website states that :

*In Switzerland, documents may only be served through the appropriate Swiss Central Authority under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (20 UST 361; TIAS 6638) , to which the U.S. is a signatory, or by means of letters rotatory. The Swiss penal Code 271 provides that attorneys attempting to serve process are subject to arrest on criminal charges. EXHIBIT 2*

50. Article 10 Hague Convention for alternative methods aren't available. Switzerland objects to them all.  Article 5 is the only way.

51. The Third Circuit does not favour defaults." Accuweather, 779 F. Supp. at 802. If there is any doubt as to whether the default should be set aside, the court should err on the side of setting aside the default and reaching the merits of the case. Id. at 802. There is a liberal standard of Fed. R. Civ. P. 55(c) that allows a court to set aside a previously entered default.

**Conclusion**

The motion to set aside and dismiss the case should be granted pursuant to Rule 60 because the court has made a mistake or excusable negligence arising from oversight or omission that Megas had not been served yet he could only have been at home because of the Coronavirus lockdown.

There was misrepresentation, or misconduct by the Plaintiff who failed to notify the court that Megas had attempted to accept service by visiting the police station near to where he lived and that service on Swiss resident could be made by email under The Hague Convention.

The court has been coerced and misled into issuing a judgement which is void and totally unenforceable because it is not enforceable in Switzerland as the Defendant has not been served in accordance with article 5 of The Hague Convention orFRCP 4.(f) and (m)

DATED  5 JULY 2021                                      RESPECTFULLY SUBMITTED

THOMS MEGAS pro se

18C Rue De Corberaye,
Le Chable 1934 Switzerland
Tel +41 27 5652617
Email tmegas@megas.email

**107**

EXHIBIT 1

**108**

Case 5:20-cv-01593-EGS Document 29 Filed 08/05/21 Page 10 of 13

☒ Au destinataire / *An Adressat*

☐ **A une autre personne / *An eine andere Person***
Prénom, nom et relation avec le destinataire
*Name, Vorname und Verhältnis zum Adressaten*

Date de la notification
*Datum der Zustellung* 01 05 2020

Signature / *Unterschrift*
de l'agent qui procède à la notification
*der zustellenden Person*

**Non notifiable / *Nicht zustellbar***

☐ Non réclamé / *Nicht abgeholt*

☐ A déménagé / *Weggezogen*

☐ Décédé / *Gestorben*

☐ Au service militaire, service civil ou protection civile jusqu'au ...
Im Militär-, Zivil- oder Schutzdienst bis ...

☒ Destinataire introuvable / *Empfänger nicht ermittelbar*

Raison / *Grund*

**Opposition / *Rechtsvorschlag***

Si le destinataire entend contester tout ou partie de la dette ou le droit du créancier de la réclamer par voie de poursuite, il doit former **opposition**, c'est-à-dire en faire, verbalement ou par écrit, la déclaration **immédiate** à celui qui lui remet le commandement de payer ou à l'office soussigné **dans les dix jours** à compter de la notification du commandement de payer. Si la poursuite a été introduite après une **faillite** du poursuivi et que celui-ci souhaite faire valoir qu'il n'est pas revenu à meilleure fortune, il doit l'indiquer expressément dans la motivation de l'opposition (remarques). Le poursuivi peut déposer une plainte à l'autorité cantonale de surveillance pour violation des dispositions de la loi fédérale sur la poursuite pour dettes et la faillite. Une feuille d'information à ce sujet peut être obtenue auprès de l'office des poursuites ou sur le site www.portaildespoursuites.ch.

*Der Adressat kann **unmittelbar** bei der Zustellung gegenüber dem Überbringer dieses Zahlungsbefehls oder **innert 10** Tagen nach dessen Zustellung gegenüber dem Betreibungsamt mündlich oder schriftlich **Rechtsvorschlag** erheben und damit die Forderung oder einen Teil derselben, bzw. das Recht, sie auf dem Betreibungsweg geltend zu machen, bestreiten. Wurde die Betreibung nach einem **Konkurs** des Betriebenen eingeleitet und will dieser geltend machen, er sei nicht zu neuem Vermögen gekommen, so hat er dies in der Begründung des Rechtsvorschlags (Bemerkungen) ausdrücklich festzuhalten. Der Schuldner kann bei der kantonalen Aufsichtsbehörde Beschwerde wegen Missachtung der Bestimmungen des Bundesgesetzes über Schuldbetreibung und Konkurs führen. Ein Informationsblatt mit weiteren Erläuterungen kann beim Betreibungsamt und im Internet unter www.betreibungsschalter.ch bezogen werden.*

☒ Opposition totale / *Rechtsvorschlag (gesamte Forderung)*

☐ Opposition partielle / *Teilrechtsvorschlag*

Montant contesté
*Bestrittener* CHF

Remarques / *Bemerkungen*

Date / *Datum* 01 05 2020

Signature / *Unterschrift*

2/2

**109**

EXHIBIT 2

**110**

 **U.S. Embassy in Switzerland and Liechtenstein**

# Service Process

In Switzerland, documents may only be served through the appropriate Swiss Central Authority under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (20 UST 361; TIAS 6638) , to which the U.S. is a signatory, or by means of letters rotatory. The Swiss penal Code 271 provides that attorneys attempting to serve process are subject to arrest on criminal charges.

The text of the Hague Convention on Service, which is largely self-explanatory, is published in the Law Digest Volume of the Martindale-Hubbell Law Directory under the heading, "Selected International Conventions." The Hague Service Convention provides a convenient method of obtaining service by a foreign judicial authority. The party seeking service or the party's attorney should obtain two copies of the Request for Service form (USM-94) from any U.S. Marshalls office. The form is also reprinted as an annex to the Convention in Martindale-Hubbell. Service is requested by sending the completed forms with the documents to be served and any appropriate translations, in duplicate, directly to a foreign central authority. In their accession to the treaty, the Swiss noted that service by mail directly to the parties involved is not permitted.

## Methods of Service

### Article 5, paragraph 3
Switzerland, in a reservation to its accession to the Convention, declared that in cases where the addressee does not voluntarily accept a document, it cannot officially be served on him or her in accordance with Article 5, first paragraph, unless it is in the language of the authority addressed, i.e. in German, French or Italian, or accompanied by a translation into one of these languages, depending on the part of Switzerland in which the document is to be served.

### Article 8 – Service by Diplomatic or Consular Channels
Switzerland has declared that it objects to service by consular or diplomatic channels on its territory (Articles 8). Furthermore, officers of the Foreign Service of the United States are prohibited by Federal regulation (22 CFR 92.85) from serving process on behalf of private litigants or appointing others to do so,.any state law to the contrary notwithstanding.

### Article 10 – Service By Mail or by Judicial Officer in Requested Foreign State

on ratification, Switzerland declared that it objects to the use of the methods of service referred to in Article 10, including service by postal channels.

As a general rule, the U.S. favors the use of service through the Convention Central Authority in other countries party to it. If service of process by registered mail is effected in a country like Switzerland which may not consider such service valid, enforcement of a U.S. judgment in that or a third country may be difficult.

## Time Frame

The U.S. Embassy at Bern advises that the length of time required to effect service by the Government of Switzerland varies by case and canton, but will generally go fairly quickly. Because fewer bureaucratic steps are involved, service and taking of evidence under the Hague Conventions will likely be faster that the three months or longer required when using the letters rotatory method.

## Status Reports and Proof of Service

The appropriate points of contact for status reports are the relevant cantonal central authorities. Proof of service will be forwarded directly to the applicant. For information on serving process by Letters Rotatory in Switzerland, please refer to the Judicial Assistance flyer on this topic.

Please note: The information in this circular relating to the legal requirements of a specific foreign country is provided for general information only. Questions involving interpretation of specific foreign laws should be addressed to foreign counsel.

This is the official website of the U.S. Embassy in Switzerland & Liechtenstein. External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE           :
COMMISSION,                       :
                                  :
          Plaintiff,              :          CIVIL ACTION NO. 20-1593
                                  :
     v.                           :
                                  :
TODD LAHR and THOMAS MEGAS,       :
                                  :
          Defendants.             :

## ORDER

**AND NOW**, this 10th day of August, 2021, the *pro se* movant, Thomas Megas, having

filed a motion to strike default judgment (Doc. No. 29), it is hereby **ORDERED** as follows:

1.     The plaintiff shall file any response in opposition to the motion (Doc. No. 29) by

**August 24, 2021**; and

2.     The court will hold a hearing on the motion to strike default judgment on **Friday**,

**September 10, 2021**, at **10:00 a.m.** at the Holmes Building, 101 Larry Holmes Drive, 4th Floor,

Easton, Pennsylvania 18042.

                         BY THE COURT:


                         /s/ *Edward G. Smith*
                         EDWARD G. SMITH, J.

**113**

Case 5:20-cv-01593-EGS

Eastern District Court of Pennsylvania                                    19 August 2021

Securities Exchange Commission

                V

        Lahr & alia and Petitioner Thomas Megas pro se

 Request

Request to reconsider denial of request for telephone/video hearing
for hearing scheduled for 10 September 2021 at 10 am to consider motion
to dismiss default judgement against Thomas Megas on 30 July 2021 and to cite explanation for
requesting a physical hearing

On August 16 2021 Thomas Megas pro se requested the court to organise a telephone hearing
as a substitute for a physical hearing. See Exhibit 1.

The Honorable Edward George Smith denied the proposed change. See Exhibit 2

The decision to deny the request for a telephone hearing is inconsistent with all the previous hear-
ing orders granted to date, and appears to be contrary toThe Response to COVID-19 (CORON-
AVIRUS) policy of the Eastern District Court of Pennsylvania.

I am unable to attend the hearing in Pennsylvania on the date and time that has been set because
I cannot make the journey as it is not safe and I do not have the resources to do so.


Prior to the default judgement being  issued the court held three hearings , on 8 March 2021 Doc
21, 15 June 2021 Doc 23, and 21 July Doc 25, see exhibits 3, 4 and 5. Showing the  orders and
on each occasion the Honorable Edward G. Smith ordered that each hearing be by telephone, so
the denial of the request for a telephone hearing is not consistent with the treatment afforded by
the court to the SEC being in total contradiction with the court's approach prior to my intervention
and appears to be contrary to the Response In the EXHIBIT 6 document The Eastern District
Court states page 6 that older adults and individuals with medical conditions are at an increased
risk of severe illness from COVID-19 and, thus, are considered 'vulnerable individuals' for the pur-
poses of the Guidelines.
The whole world knows that people of my age who have a history of respiratory problems qualify
as vulnerable people who should be shielding from, and not exposing themselves to the risk of
being infected with Coronavirus.

Furthermore on page 15 of the same document under the heading Judicial Proceedings it states
that "Video and telephone conferencing should be continued to be used to the greatest extent
possible"  and that in-person proceedings "shall continue to be limited".

In denying the request for a telephone hearing The Honorable Edward G Smith ignores the advice
contained in the Court's own policy document and is adopting a totally different approach to his
decisions on hearings in the case prior to the motion to reconsider. and one that is overtly preju-
dicial to the petioner`s health and ability to participate in the motion process scheduled for the 10
September 2021 effectively barring the petitioner from the proceedings.

In the current torrid COVID climate it is totally unreasonable to make a man of 78 years to fly from
Switzerland to the USA at such short notice and in the circumstances it is not unreasonable to
ask the Honorable Edward G. Smith to reconsider his decision  or in the alternative explain his
decision.

114

THOMAS MEGAS PRO SE

ROUTE DE CORBERAYE 18C
LE CHABLE 1934
SWITZERLAND
TPM8@HAROLDS.CH
TEL +41 27 565 2617

EXHIBIT 1

-----Original Message-----
From: Thomas Megas <tpm8@harolds.ch>
Sent: Friday, August 13, 2021 10:28 AM
To: Jennifer Fitzko <Jennifer_Fitzko@paed.uscourts.gov>
Cc: sec <scarlatom@sec.gov>
Subject: case 5-20-cv-01593-EGS conduct of meeting scheduled for 10th September 2021 at 10 am-correction

CAUTION - EXTERNAL:

To  Eastern District of Pennsylvania District Court

Case 5:20-cv-01593-EGS      Securities Exchange Commission v Lahr et alia

REQUEST

Due to covid restrictions and my age I am unable to attend in person the meeting scheduled for the 10 September 2021 at 10 am and request the court conduct the meeting remotely by telephone/video conference with the provision of dial in information.

Yours respectfully

Thomas Megas

Page 3  of  7                         Case 5 : 20-cv-01593-EGS

EXHIBIT 2



ITEM 2



| SR | Shana Restucci | Yesterday at 14:51 |
| | RE: case 5-20-cv-01593-EGS conduct of meeting scheduled for 10th September 2021 at 10 am-corre... | |
| | To: Thomas Megas,  Cc: sec | Details |

Siri found 1 event   Fri, 10 Sep at 10:00                        add...  ⊗

Dear Mr. Megas,

   I have consulted with Judge Smith regarding your request, after careful consideration, he has determined that your request must be denied and that you appear in person on September 10, 2021, at 10:00 a.m.  The court will take appropriate measures to ensure that all participants are safe.  Thank you for your kind attention to this matter.



*Shana Restucci, Civil Deputy Clerk*
**Honorable Edward G. Smith**
**United States District Court**
**For the Eastern District of Pennsylvania**
**The Holmes Building**
**101 Larry Holmes Drive, 4th Floor**
**Easton, PA  18042**
**Telephone:  610-333-1833**
**Facsimile:  610-252-5599**
*Shana_restucci@paed.uscourts.gov*

Page 4 of 7        Case 5 : 20-cv-01593-EGS

EXHIBIT 3

Case 5:20-cv-01593-EGS   Document 21   Filed 03/02/21   Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1593 |
| | : | |
| v. | : | |
| | : | |
| TODD LAHR and THOMAS MEGAS, | : | |
| | : | |
| Defendants. | : | |

### ORDER

**AND NOW**, this 2nd day of March, 2021, it is hereby **ORDERED** that the court will hold a telephone status conference with counsel for the plaintiff on **Monday**, **March 8, 2021**, at **10:30 a.m.** Counsel call 1-571-353-2300 and use pin 363973916# to enter the conference call.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

**117**

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1593 |
| | : | |
| v. | : | |
| | : | |
| TODD LAHR and THOMAS MEGAS, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this 15th day of June, 2021, the plaintiff having moved for and the clerk of court having entered default against the defendant, Thomas Megas, on April 29, 2021, *see* Doc. No. 22 and Unnumbered Docket Entries Following Doc. No. 22; and the plaintiff having not yet moved for a default judgment against Mr. Megas; accordingly, it is hereby **ORDERED** that the court will hold a telephone conference with counsel for the plaintiff on **Thursday**, **June 17, 2021**, at **10:30 a.m.** Counsel shall call 1-571-353-2300 and use pin 363973916# to enter the conference call.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

**118**

Page 6 of 7                        Case 5:20-cv-01593-EGS

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,                          :
                                     :
                    Plaintiff,       :        CIVIL ACTION NO. 20-1593
                                     :
         v.                          :
                                     :
TODD LAHR and THOMAS MEGAS,          :
                                     :
                    Defendants.      :

**ORDER**

**AND NOW**, this 21st day of July, 2021, the Securities and Exchange Commission having moved for a default judgment against the remaining defendant, Thomas Megas ("Mr. Megas") (Doc. No. 24); and the clerk of court having entered default against Mr. Megas after he failed to file a response to the complaint, *see* Unnumbered Docket Entries After Doc. No. 22; accordingly, it is hereby **ORDERED** that the court will hold a hearing by telephone on the motion for default judgment (Doc. No. 24) on **Friday, July 30, 2021**, at **10:00 a.m.** Counsel shall call 1-571-353-2300 and use pin 363973916# to enter the conference call.

**NOTICE TO DEFENDANT**

**THE DEFENDANT, THOMAS MEGAS, IS HEREBY NOTIFIED THAT THE PURPOSE OF THIS HEARING IS TO DETERMINE WHETHER A DEFAULT JUDGMENT SHALL BE ENTERED AGAINST HIM AND THE AMOUNT OF THAT JUDGMENT. THE DEFENDANT HAS THE RIGHT TO APPEAR BEFORE THE UNDERSIGNED AT THE HEARING TO OPPOSE THE RELIEF REQUESTED BY THE PLAINTIFF OR PARTICIPATE BY TELEPHONE BY CALLING 1-571-353-2300 AND USING PIN 363973916#. IF THE DEFENDANT FAILS TO APPEAR, A DEFAULT JUDGMENT MAY BE ENTERED AGAINST HIM BASED ON INFORMATION PROVIDED BY THE PLAINTIFFS.**

**119**

Case 5 : 20-cv-01593-EGS

EXHIBIT 6

# United States District Court
# for the Eastern District of Pennsylvania
# COVID-19 Reopening Guidelines

Date: October 1, 2020

These guidelines are subject to modification, rescission, or replacement as circumstances may warrant. The latest version of these guidelines will be available on the District website:
http://www.paed.uscourts.gov/response-to-covid-19



# TRIBUNAL DE L'ENTREMONT

CANTON DU VALAIS

Sembrancher, 27.4.2020

ZZ 20 2

Matthew Scarlato, Attorney
SEC
100 F Street, NE
Mail Stop 5984
Washington DC 20549
USA

**ZZ 20 2  Summons in a civil action (20-cv-1593) - Thomas Megas**

Dear Sir,

The above-mentioned summons could not be served on Thomas Megas who will remain abroad until the end of August.

Without further instructions from you, the court will try again to serve the documents on Thomas Megas in September.

Yours sincerely.

The district Judge :

P. Gabany

**Enclosure :**
- certificat



Département de la sécurité, des institutions et du sport
**Police cantonale**

Departement für Sicherheit, Institutionen und Sport
Kantonspolizei

**CANTON DU VALAIS**
**KANTON WALLIS**

Expédié le

**2 7 AVR. 2020**

L'atteste : *[signature]*



## Rapport administratif

22.04.2020 08:42

Au Commandement de la
Police cantonale
Case postale 1119
1950 Sion

| | | |
|---|---|---|
| Références | : | Tribunal de l'Entremont - ZZ 20 2<br>Cdmt VS 511822 - Ar III gend - BTB Entremont |
| Autorité | : | Tribunal de l'Entremont, Rue du Collège 2, CP 14, 1933 Sembrancher |
| Concerne | : | MEGAS Thomas, né MEGAS, de MEGAS Themistocles et de GELBERT Annie, né le 17.02.1943 en Grande-Bretagne, originaire de Grande-Bretagne, marié à PAEZ PALACIOS Maria Alejandra, indépendant. Adresse domicile : 1934 Le Châble, route de Corberaye 18C. Numéro de téléphone : +41 79 290 94 99 |
| Motifs | : | Echec de notification |

Nous vous informons que nous n'avons pas pu procéder à cette notification. En effet, MEGAS Thomas a été contacté téléphoniquement le 20.04.2020. Il a expliqué se trouver à l'étranger jusqu'à fin août 2020. Il a exprimé ne rien vouloir recevoir d'ici-là et qu'il reprendrait contact avec nous dès son retour en Suisse.

Selon le contrôle des habitants de la commune de Bagnes, MEGAS Thomas est légalement domicilié à Route de Corberaye 18C, 1934 Le Châble.

Au vu de ce qui précède, nous vous retournons la requête.

*[signature]*
C. Thurre, gend

VU - TRANSMIS

le ...22.04.2020...
*[signature]*

Annexe(s):   1 requête

**122**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 20-cv-1593 |
| | ) | |
| TODD LAHR | ) | |
| and | ) | |
| THOMAS MEGAS | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Thomas Megas
Route de Corberaye 18A
Le Chable / Villette
1934
Switzerland

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

MATTHEW F. SCARLATO
SEC
100 F STREET NE
MAIL STOP 5984
WASHINGTON, DC 20549

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 04/01/2020

s/ Ann Murphy
*Signature of Clerk or Deputy Clerk*

Kate Barkman, Clerk of Court
U.S. District Court, Eastern District of PA

**123**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  20-cv-1593

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
on *(date)* _____ ; or

☒ I returned the summons unexecuted because  Mr. HEGAS is abroad until the end of _____ ; or
August

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date:  21 04 2020

Server's signature

C. Thurre, gerd
Printed name and title

LTB Entremont, Route de Dzardy 8, 1941 Chiez
Server's address

Additional information regarding attempted service, etc:

Adress of HEGAS Thomas. Route de Corberaye 18 C, 1934 Le Châble

AO 440 (Rev. 06/12) Citation dans une procedure civile

# TRIBUNAL DE DISTRICT DES ÉTATS-UNIS

pour le

District Est de New York

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Demandeur(s)* | ) | |
| v. | ) | Procédure civile no. 20-cv-1593 |
| TODD LAHR | ) | |
| et | ) | |
| THOMAS MEGAS | ) | |
| | ) | |
| *Défendeur(s)* | ) | |

## CITATION DANS UNE PROCÉDURE CIVILE

À : *(nom et adresse du défendeur)*      Thomas Megas
Route de Corberaye 18A
Le Chable / Villette
1934
Suisse

Une action en justice a été intentée contre vous.

Dans les 21 jours suivant la signification de cette citation à comparaître (à l'exclusion du jour de sa réception) — ou 60 jours si vous représentez les États-Unis ou un organisme des États-Unis, ou êtes un officier ou employé des États-Unis tel que décrit dans Règles fédérales de Procédure civile P. 12 (a)(2) ou (3) — vous devez répondre à la plainte ou motion ci-jointe du demandeur conformément à la Règle 12 des Règles fédérales de Procédure civile. La réponse ou motion doit être signifiée au demandeur ou avocat du demandeur, dont le nom et l'adresse sont :

MATTHEW SCARLATO
SEC
100 F STREET NE
MAIL STOP 5984
WASHINGTON, DC 20549

Si vous ne répondez pas, un jugement par défaut sera rendu contre vous aux fins d'accorder la mesure réparatoire demandée dans la plainte. Vous devez également déposer votre réponse ou motion auprès de ce tribunal.

*GREFFIÈRE DU TRIBUNAL*

Date :  01/04/2020

Kate Barkman, greffière du tribunal
Tribunal de district des États-Unis, District Est de PA

*s/ Ann Murphy*

*Signature de la greffière ou greffière adjointe*

**125**

AO 440 (Rév. 06/12) Citation dans une procedure civile (Page 2)

Procédure civile no. 20-cv-1593

## PREUVE DE LA NOTIFICATION
### (Cette section ne doit pas être déposée auprès du tribunal sauf exigence de R. Féd. P. Civ. 4 (l))

Cette citation pour (nom et titre de la personne, le cas échéant) Mr. MEGAS Thomas

a été reçue par moi-même le (date) 20.04.00

☐ J'ai personnellement signifié la citation à la personne à (lieu)

le (date) ; ou

☐ J'ai laissé la citation à la résidence ou au domicile habituel de la personne à (nom)

, une personne d'âge et de discrétion adéquats qui habite audit lieu

le (date) et envoyé un exemplaire à la dernière adresse connue de la personne ;

☐ J'ai signifié la citation à (nom de la personne) , qui est

désigné par la loi comme agent autorisé aux fins de signification au nom de (nom de l'organisation)

le (date) ; ou

☒ J'ai renvoyé la citation non exécutée parce que Mr. MEGAS se trouve à l'étranger jusqu'à ; ou
fin aoùt

☐ Autre (préciser) :

Mes honoraires sont de $ _____ pour le déplacement et de $ _____ pour la notification, soit un total de $ 0.00 .

Je déclare sous peine de parjure que les informations sont véridiques.

Date : 01.04 2020

_Signature de la personne ayant notifié_

C. Jaune, gard
_Nom et titre en lettres d'imprimerie_

_Adresse de la personne ayant notifié_

Informations supplémentaires concernant toute tentative de notification. etc. :

Adresse de MEGAS Thomas : Porte de Cornelade I.C, 1934 Prade

126



TRIBUNAL DE L'ENTREMONT

CANTON DU VALAIS

Sembrancher, le 19 octobre 2020

ZZ 20 2

Matthew Scarlato, Attorney
Securities and Exchange Commission
SEC
100 F Street, NE
Washington DC 20549
USA

**ZZ 20 2**

Dear sir,

I am returning to you, in annex, your request for international legal assistance which could not be executed.

Yours faithfully.

The district judge :

P. Gapany

**Annex: mentioned**

**127**

# Companies House

Companies House does not verify the accuracy of the information filed
(http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

# Thomas MEGAS

## Filter appointments

☐
Current appointments

Apply filter

## Total number of appointments 4

Date of birth
February 1943

---

### SCHNEIDER TRADING LIMITED (12105240)

Company status **Active**

Correspondence address
 **Norland Square Mansions, Norland Square Mansions, 53 Norland Square, London, United Kingdom, W11 4PY**

Role Active **Director**

Appointed on **16 July 2019**

Nationality **British**

Country of residence **United Kingdom**

Occupation **Managing Director**

---

### MARCH RACING LIMITED (09979107)

Company status **Active**

Correspondence address **Savoy House, Savoy Circus, London, United Kingdom, W3 7DA**

Role Active **Director**

Appointed on **14 April 2016**

Nationality **British**

Country of residence **United Kingdom**

Occupation **Company Director**

---

### BARCELONA ADMINISTRATORS LTD (08632407)

Company status **Dissolved**

Correspondence address **15 Onslow Gardens, 15 Onslow Gardens, London, United Kingdom, SW7 3AW**

Role **Director**

Appointed on **31 July 2013**

**128**

Thomas MEGAS - Personal Appointments (free information from Companies House)

Nationality  **British**

Country of residence  **United Kingdom**

Occupation  **Economist**

## SCHNEIDER ENERGY LTD (12104446)

Company status  **Active**

Correspondence address
  **Norland Square Mansions, Norland Square Mansions, 53 Norland Square, London, United Kingdom, W11 4PY**

Role Resigned  **Director**

Appointed on  **15 July 2019**

Resigned on  **28 September 2020**

Nationality  **British**

Country of residence  **United Kingdom**

Occupation  **Managing Director**

Tell us what you think of this service(link opens a new window) (https://www.research.net/r/S78XJMV) Is there anything wrong with this page? (link opens a new window) (https://beta.companieshouse.gov.uk/help/feedback?sourceurl=https://find-and-update.company-information.service.gov.uk/officers/t_op_1OqNPGgRyaF6V1IY-r2_Hc/appointments)

**129**

| From: | Scarlato, Matthew |
|---|---|
| To: | tpm14@hotmail.com |
| Subject: | To: Thomas Megas |
| Date: | Tuesday, October 27, 2020 9:53:35 AM |

Mr. Megas,

I am an attorney with the U.S. Securities and Exchange Commission ("SEC") in Washington, D.C. I am writing because the SEC filed a civil action against you on March 27, 2020, in the case styled *SEC v. Lahr*, in the Eastern District of Pennsylvania, and we have been unable to locate you to effect service of process. Can you please contact me as soon as possible to discuss, or have your attorney reach out to me if you are represented by counsel?

Thank you.


**Matthew F. Scarlato**
*Trial Attorney*
U.S. Securities & Exchange Commission
Division of Enforcement
100 F Street, NE
Mail Stop 5984
Washington, DC 20549
(202) 551-3749

**130**

| From: | Authentication |
|---|---|
| To: | Scarlato, Matthew |
| Subject: | Receipt: To: Thomas Megas (Delivery Failure) |
| Date: | Wednesday, November 04, 2020 1:55:04 PM |
| Attachments: | To Thomas Megas.msg |
| | SMTP Log-1.txt |
| | SMTP Log-2.txt |
| | SMTP Log-2.rec.txt |
| | SMTP History-1.txt |
| | SMTP History-2.txt |
| | DSN_Record-1.txt |
| | DSN_Record-2.txt |
| | DSN_Record-2-2.txt |
| | DeliveryReceipt.xml |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



The receipt you have submitted to our system is valid and proves the delivery results displayed below.

** A copy of the original message is attached. **

### Delivery Status

| Address | Status | Details | Delivered (UTC*) | Delivered (local) | Opened (local) |
|---|---|---|---|---|---|
| tpm14@hotmail.com | Delivered to Mailbox | Delivery confirmed by recipient mail server at outlook.com | 10/27/2020 01:53:43 PM (UTC) | 10/27/2020 08:53:43 AM (UTC -05:00) | |
| scarlatom@sec.gov | Secondary Dispatch - Delivery Failed | 550 #5.7.1 DMARC unauthenticated mail is prohibited. | *** | *** | |

*UTC represents Coordinated Universal Time: https://www.rmail.com/resources/coordinated-universal-time/

### Message Envelope

| From: | Scarlato, Matthew< scarlatom@SEC.GOV > |
|---|---|
| Subject: | To: Thomas Megas |
| To: | <tpm14@hotmail.com> |
| Co: | |
| Boo: | <scarlatom@sec.gov> |
| Network ID: | <1adffe9cc17941239110a7d60652a811@SEC.GOV> |
| Received by RMail System: | 10/27/2020 01:53:40 PM (UTC) |
| Client Code: | |

### Message Statistics

| Tracking Number: | 3B76233862AA60B3E938684BEDC34C803002E264 |
|---|---|
| Message Size: | 49689 |
| Features Used: | |

### Delivery Audit Trail

10/27/2020 1:53:40 PM starting hotmail.com/{default} \n 10/27/2020 1:53:40 PM connecting from mta21.r1.rpost.net (0.0.0.0) to hotmail-com.olc.protection.outlook.com (104.47.4.33) \n 10/27/2020 1:53:40 PM connected from 192.168.10.11:50526 \n 10/27/2020 1:53:41 PM >>> 220 AM5EUR02FT026.mail.protection.outlook.com Microsoft ESMTP MAIL Service ready at Tue, 27 Oct 2020 13:53:41 +0000 \n 10/27/2020 1:53:41 PM <<< EHLO mta21.r1.rpost.net \n 10/27/2020 1:53:41 PM >>> 250-AM5EUR02FT026.mail.protection.outlook.com Hello [52.58.131.9] \n 10/27/2020 1:53:41 PM >>> 250-SIZE 49283072 \n 10/27/2020 1:53:41 PM >>> 250-PIPELINING \n 10/27/2020 1:53:41 PM >>> 250-DSN \n 10/27/2020 1:53:41 PM >>> 250-ENHANCEDSTATUSCODES \n 10/27/2020 1:53:41 PM >>> 250-STARTTLS \n 10/27/2020 1:53:41 PM >>> 250-8BITMIME \n 10/27/2020 1:53:41 PM >>> 250-BINARYMIME \n 10/27/2020 1:53:41 PM >>> 250-CHUNKING \n 10/27/2020 1:53:41 PM >>> 250 SMTPUTF8 \n 10/27/2020 1:53:41 PM <<< STARTTLS \n 10/27/2020 1:53:41 PM >>> 220 2.0.0 SMTP server ready \n 10/27/2020 1:53:41 PM tls:TLSv1.2 connected with 256-bit ECDHE-RSA-AES256-GCM-SHA384 \n 10/27/2020 1:53:41 PM tls:Cert: /C=US/ST=Washington/L=Redmond/O=Microsoft

Corporation/CN=mail.protection.outlook.com; issuer=/C=BE/O=GlobalSign nv-sa/CN=GlobalSign Organization Validation CA - SHA256 - G3; verified=no \n 10/27/2020 1:53:41 PM <<< EHLO mta21.r1.rpost.net \n 10/27/2020 1:53:41 PM >>> 250- AM5EUR02FT026.mail.protection.outlook.com Hello [52.58.131.9] \n 10/27/2020 1:53:41 PM >>> 250-SIZE 49283072 \n 10/27/2020 1:53:41 PM >>> 250-PIPELINING \n 10/27/2020 1:53:41 PM >>> 250-DSN \n 10/27/2020 1:53:41 PM >>> 250- ENHANCEDSTATUSCODES \n 10/27/2020 1:53:41 PM >>> 250-8BITMIME \n 10/27/2020 1:53:41 PM >>> 250-BINARYMIME \n 10/27/2020 1:53:41 PM >>> 250-CHUNKING \n 10/27/2020 1:53:41 PM >>> 250 SMTPUTF8 \n 10/27/2020 1:53:41 PM <<< MAIL FROM:<rcptgTYdzDN9b270JuSX1I5JhrXe07JyIeC4IoZrnwiJ@r1.rpost.net> BODY=8BITMIME RET=FULL \n 10/27/2020 1:53:41 PM >>> 250 2.1.0 Sender OK \n 10/27/2020 1:53:41 PM <<< RCPT TO:<tpm14@hotmail.com> NOTIFY=SUCCESS,FAILURE,DELAY \n 10/27/2020 1:53:41 PM >>> 250 2.1.5 Recipient OK \n 10/27/2020 1:53:41 PM <<< DATA \n 10/27/2020 1:53:42 PM >>> 354 Start mail input; end with <CRLF>.<CRLF> \n 10/27/2020 1:53:42 PM <<< . \n 10/27/2020 1:53:43 PM >>> 250 2.6.0 <gTYdzDN9b270JuSX1I5JhrXe07JyIeC4IoZrnwiJ@r1.rpost.net> [InternalId=64119566802363, Hostname=AM5EUR02HT171.eop- EUR02.prod.protection.outlook.com] 56721 bytes in 0.099, 558.772 KB/sec Queued mail for delivery -> 250 2.1.5 \n 10/27/2020 1:53:43 PM <<< QUIT \n 10/27/2020 1:53:43 PM >>> 221 2.0.0 Service closing transmission channel \n 10/27/2020 1:53:43 PM closed hotmail- com.olc.protection.outlook.com (104.47.4.33) in=919 out=48886 \n 10/27/2020 1:53:43 PM done hotmail.com/{default}

---

10/27/2020 1:53:40 PM starting sec.gov/{default} \n 10/27/2020 1:53:40 PM connecting from mta21.r1.rpost.net (0.0.0.0) to d1- ip01.sec.gov (162.138.202.5) \n 10/27/2020 1:53:40 PM connected from 192.168.10.11:35008 \n 10/27/2020 1:53:40 PM >>> 220 D1- IP01.SEC.GOV ESMTP \n 10/27/2020 1:53:40 PM <<< EHLO mta21.r1.rpost.net \n 10/27/2020 1:53:40 PM >>> 250-D1-IP01.SEC.GOV \n 10/27/2020 1:53:40 PM >>> 250-8BITMIME \n 10/27/2020 1:53:40 PM >>> 250-SIZE 78643200 \n 10/27/2020 1:53:40 PM >>> 250 STARTTLS \n 10/27/2020 1:53:40 PM <<< STARTTLS \n 10/27/2020 1:53:41 PM >>> 220 Go ahead with TLS \n 10/27/2020 1:53:41 PM tls:TLSv1.2 connected with 256-bit ECDHE-RSA-AES256-GCM-SHA384 \n 10/27/2020 1:53:41 PM tls:Cert: /C=US/ST=District of Columbia/L=Washington/jurisdictionC=US/O=U.S. Securities and Exchange Commission/businessCategory=Government Entity/serialNumber=1934-01-01/CN=D2-IronPort01.SEC.GOV; issuer=/C=US/O=Entrust, Inc./OU=See www.entrust.net/legal-terms/OU= (c) 2014 Entrust, Inc. - for authorized use only/CN=Entrust Certification Authority - L1M; verified=no \n 10/27/2020 1:53:41 PM <<< EHLO mta21.r1.rpost.net \n 10/27/2020 1:53:41 PM >>> 250-D1-IP01.SEC.GOV \n 10/27/2020 1:53:41 PM >>> 250-8BITMIME \n 10/27/2020 1:53:41 PM >>> 250 SIZE 78643200 \n 10/27/2020 1:53:41 PM <<< MAIL FROM: <rcptDj0YQbpoMzLudX9TGyZEkbR3ZWxScrN1HwER11Ks@r1.rpost.net> BODY=8BITMIME \n 10/27/2020 1:53:41 PM >>> 250 sender <rcptDj0YQbpoMzLudX9TGyZEkbR3ZWxScrN1HwER11Ks@r1.rpost.net> ok \n 10/27/2020 1:53:41 PM <<< RCPT TO: <scarlatom@sec.gov> \n 10/27/2020 1:53:41 PM >>> 250 recipient <scarlatom@sec.gov> ok \n 10/27/2020 1:53:41 PM <<< DATA \n 10/27/2020 1:53:41 PM >>> 354 go ahead \n 10/27/2020 1:53:41 PM <<< . \n 10/27/2020 1:53:42 PM >>> 550 #5.7.1 DMARC unauthenticated mail is prohibited. \n 10/27/2020 1:53:42 PM <<< QUIT \n 10/27/2020 1:53:42 PM >>> 221 D1-IP01.SEC.GOV \n 10/27/2020 1:53:42 PM closed d1-ip01.sec.gov (162.138.202.5) in=374 out=49023 \n 10/27/2020 1:53:42 PM done sec.gov/{default}

---

From: postmaster@mta21.r1.rpost.netReceived: from mta21.r1.rpost.net ([192.168.10.11]) by trans21.r1.rpost.net over TLS secured channel with Microsoft SMTPSVC(8.5.9600.16384); Tue, 27 Oct 2020 13:53:43 +0000Hello, this is the mail server on mta21.r1.rpost.net. \n \n I am sending you this message to inform you on the delivery status of a \n message you previously sent. Immediately below you will find a list of \n the affected recipients; also attached is a Delivery Status Notification \n (DSN) report in standard format, as well as a copy of the original message. \n \n <scarlatom@sec.gov> delivery failed; will not continue trying \n

---

From:postmaster@outlook.com:Your message has been delivered to the following recipients: tpm14@hotmail.com<mailto:tpm14@hotmail.com> Subject: To: Thomas Megas

---

From:postmaster@mta21.r1.rpost.net:Hello, this is the mail server on mta21.r1.rpost.net. I am sending you this message to inform you on the delivery status of a message you previously sent. Immediately below you will find a list of the affected recipients; also attached is a Delivery Status Notification (DSN) report in standard format, as well as a copy of the original message. <scarlatom@sec.gov> delivery failed; will not continue trying

---

From:postmaster@mta81.r3.rpost.net:Hello, this is the mail server on mta81.r3.rpost.net. I am sending you this message to inform you on the delivery status of a message you previously sent. Immediately below you will find a list of the affected recipients; also attached is a Delivery Status Notification (DSN) report in standard format, as well as a copy of the original message. <scarlatom@sec.gov> delivery failed; will not continue trying

This Registered Receipt™ email is verifiable proof of your Registered Email™ transaction. It contains:

1. An official time stamp.
2. Proof that your message was sent and to whom it was sent.
3. Proof that your message was delivered to its addressees or their authorized electronic agents.
4. Proof of the content of your original message and all of its attachments.

Note: By default, RPost does not retain a copy of your email or this receipt and you should not rely on the information above until the receipt is verified by the RMail system. Keep this email and its attachment in place for your records. General terms and conditions are available at Legal Notice. RMail services are patented, using RPost patented technologies, including US patents 8209389, 8224913, 8468199, 8161104, 8468198, 8504628, 7966372, 6182219, 6571334 and other US and non-US patents listed at RPost Communications.

---

For more information about RMail® services, visit www.rmail.com.

An RPost® Technology

| From: | Authentication |
| To: | Scarlato, Matthew |
| Subject: | Receipt: [WARNING: MESSAGE ENCRYPTED][WARNING: MESSAGE ENCRYPTED]Thomas Megas |
| Date: | Monday, April 12, 2021 12:22:54 PM |
| Attachments: | WARNING MESSAGE ENCRYPTEDWARNING MESSAGE ENCRYPTEDThomas Megas.msg |
| | SMTP Log-1.txt |
| | SMTP History-1.txt |
| | DSN_Record-1.txt |
| | DeliveryReceipt.xml |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



The receipt you have submitted to our system is valid and proves the delivery results displayed below.

** A copy of the original message is attached. **

## Delivery Status

| Address | Status | Details | Delivered (UTC*) | Delivered (local) | Opened (local) |
|---|---|---|---|---|---|
| tpm14@hotmail.com | Delivered to Mailbox | Delivery confirmed by recipient mail server at outlook.com | 02/10/2021 10:22:35 PM (UTC) | 02/10/2021 04:22:35 PM (UTC -06:00) | |

*UTC represents Coordinated Universal Time: https://www.rmail.com/resources/coordinated-universal-time/

## Message Envelope

| From: | Scarlato, Matthew< scarlatom@SEC.GOV > |
| Subject: | [WARNING: MESSAGE ENCRYPTED][WARNING: MESSAGE ENCRYPTED]Thomas Megas |
| To: | <tpm14@hotmail.com> |
| Cc: | |
| Bcc: | |
| Network ID: | <dc5b7885916543a1b2c38e9b655cd676@SEC.GOV> |
| Received by RMail System: | 02/10/2021 10:22:30 PM (UTC) |
| Client Code: | |

## Message Statistics

| Tracking Number: | BDCC85413601383CB48BD8FC967CD8DB7380B5A0 |
| Message Size: | 983256 |
| Features Used: | |
| File Size : | File Name: |
| 306.2 KB | ECF 1 - Complaint.pdf |
| 172.8 KB | Summons 20-cv-1593 to Thomas Megas.pdf |
| 185.9 KB | ECF 18 - Order Granting Alt service and extension.pdf |

## Delivery Audit Trail

2/10/2021 10:22:31 PM starting hotmail.com/{default} \n 2/10/2021 10:22:31 PM connecting from mta21.r1.rpost.net (0.0.0.0) to hotmail-com.olc.protection.outlook.com (104.47.59.161) \n 2/10/2021 10:22:31 PM connected from 192.168.10.11:51514 \n 2/10/2021 10:22:32 PM >>> 220 DM6NAM12FT019.mail.protection.outlook.com Microsoft ESMTP MAIL Service ready at Wed, 10 Feb 2021 22:22:31 +0000 \n 2/10/2021 10:22:32 PM <<< EHLO mta21.r1.rpost.net \n 2/10/2021 10:22:32 PM >>> 250-DM6NAM12FT019.mail.protection.outlook.com Hello [52.58.131.9] \n 2/10/2021 10:22:32 PM >>> 250-SIZE 49283072 \n 2/10/2021 10:22:32 PM >>> 250-PIPELINING \n 2/10/2021 10:22:32 PM >>> 250-DSN \n 2/10/2021 10:22:32 PM >>> 250-ENHANCEDSTATUSCODES \n 2/10/2021 10:22:32 PM >>> 250-STARTTLS \n 2/10/2021 10:22:32 PM >>> 250-8BITMIME \n 2/10/2021 10:22:32 PM >>> 250-BINARYMIME \n 2/10/2021 10:22:32 PM >>> 250-CHUNKING \n 2/10/2021 10:22:32 PM >>> 250 SMTPUTF8 \n 2/10/2021 10:22:32 PM <<< STARTTLS \n 2/10/2021 10:22:32 PM >>> 220 2.0.0 SMTP server ready \n 2/10/2021 10:22:32 PM tls:TLSv1.2 connected with 256-bit ECDHE-RSA-AES256-GCM-SHA384 \n 2/10/2021 10:22:32 PM tls:Cert: /C=US/ST=Washington/L=Redmond/O=Microsoft Corporation/CN=mail.protection.outlook.com; issuer=/C=BE/O=GlobalSign nv-

sa/CN=GlobalSign Organization Validation CA - SHA256 - G3; verified=no \n 2/10/2021 10:22:32 PM <<< EHLO mta21.r1.rpost.net \n 2/10/2021 10:22:32 PM >>> 250-DM6NAM12FT019.mail.protection.outlook.com Hello [52.58.131.9] \n 2/10/2021 10:22:32 PM >>> 250-SIZE 49283072 \n 2/10/2021 10:22:32 PM >>> 250-PIPELINING \n 2/10/2021 10:22:32 PM >>> 250-DSN \n 2/10/2021 10:22:32 PM >>> 250-ENHANCEDSTATUSCODES \n 2/10/2021 10:22:32 PM >>> 250-8BITMIME \n 2/10/2021 10:22:32 PM >>> 250-BINARYMIME \n 2/10/2021 10:22:32 PM >>> 250-CHUNKING \n 2/10/2021 10:22:32 PM >>> 250 SMTPUTF8 \n 2/10/2021 10:22:32 PM <<< MAIL FROM:<rcptnLhJCaYiHzsha4nfoFe0Io0KVfU9Yb6LvFarxVal@r1.rpost.net> BODY=8BITMIME RET=FULL \n 2/10/2021 10:22:32 PM >>> 250 2.1.0 Sender OK \n 2/10/2021 10:22:32 PM <<< RCPT TO:<tpm14@hotmail.com> NOTIFY=SUCCESS,FAILURE,DELAY \n 2/10/2021 10:22:32 PM >>> 250 2.1.5 Recipient OK \n 2/10/2021 10:22:32 PM <<< DATA \n 2/10/2021 10:22:33 PM >>> 354 Start mail input; end with <CRLF>.<CRLF> \n 2/10/2021 10:22:33 PM <<< . \n 2/10/2021 10:22:35 PM >>> 250 2.6.0 <nLhJCaYiHzsha4nfoFe0Io0KVfU9Yb6LvFarxVal@r1.rpost.net> [InternalId=50495930525522, Hostname=DM6NAM12HT124.eop-nam12.prod.protection.outlook.com] 990296 bytes in 2.496, 387.408 KB/sec Queued mail for delivery -> 250 2.1.5 \n 2/10/2021 10:22:35 PM <<< QUIT \n 2/10/2021 10:22:35 PM >>> 221 2.0.0 Service closing transmission channel \n 2/10/2021 10:22:35 PM closed hotmail-com.olc.protection.outlook.com (104.47.59.161) in=920 out=982456 \n 2/10/2021 10:22:35 PM done hotmail.com/{default}

From:postmaster@outlook.com:Your message has been delivered to the following recipients: tpm14@hotmail.com<mailto:tpm14@hotmail.com> Subject: [WARNING: MESSAGE ENCRYPTED][WARNING: MESSAGE ENCRYPTED]Thomas Megas

This Registered Receipt™ email is verifiable proof of your Registered Email™ transaction. It contains:

1. An official time stamp.
2. Proof that your message was sent and to whom it was sent.
3. Proof that your message was delivered to its addressees or their authorized electronic agents.
4. Proof of the content of your original message and all of its attachments.

Note: By default, RPost does not retain a copy of your email or this receipt and you should not rely on the information above until the receipt is verified by the RMail system. Keep this email and its attachment in place for your records. General terms and conditions are available at Legal Notice. RMail services are patented, using RPost patented technologies, including US patents 8209389, 8224913, 8468199, 8161104, 8468198, 8504628, 7966372, 6182219, 6571334 and other US and non-US patents listed at RPost Communications.

For more information about RMail® services, visit www.rmail.com.                                    An RPost® Technology

From: Mail Delivery System MAILER-DAEMON@d1-ip01.sec.gov
Subject: Undeliverable: Test
Date: Feb 11, 2021 at 9:13:50 AM

**Delivery has failed to these recipients or groups:**

chef_nita24@hotmail.com
A problem occurred while delivering your message to this email address. Try sending your message again. If the problem continues, please contact your email admin.

The following organization rejected your message: [104.47.14.33].

**Diagnostic information for administrators:**

Generating server: awb://D1-IP01.SEC.GOV

chef_nita24@hotmail.com
[104.47.14.33]
Remote Server returned '554 5.0.0 <[104.47.14.33] #5.0.0 smtp; 5.1.0 - Unknown address error 550-'5.5.0 Requested action not taken: mailbox unavailable (S2017062302). [awb://VI1EUR04FT022.eop-eur04.prod.protection.outlook.com]' (delivery attempts: 0)>'

Original message headers:

```
IronPort-SDR: dEQJfQVhaxvNfICBG+Z5GGI/1zS1PVHiQof40GuMR6PljybAv5gSNhBGcZvJSOCBhzfRhRH4YG
 BiJVLgT9uHCQ==
X-IronPort-AV: E=McAfee;i="6000,8403,9891"; a="98416122"
X-IronPort-AV: E=Sophos;i="5.81,170,1610427600";
   d="scan'208,217";a="98416122"
X-IronPort-DK-Sig: SEC_GOV
Received: from unknown (HELO awb://D1-DLPMAIL-02.AD.SEC.GOV) ([172.25.196.30])
  by awb://D1-IP01-DLP.SEC.GOV with ESMTP; 11 Feb 2021 09:13:41 -0500
Received: from awb://D1-IP01-DLP.SEC.GOV (unknown [172.25.196.30]) by awb://D1-DLPMAIL-02.AD.SEC.GOV
with smtp
        (TLS: TLSv1/SSLv3,128bits,ECDHE-RSA-AES128-GCM-SHA256)
        id 4260_0d15_86dc5246_aec3_4274_9647_615d37d81325;
        Thu, 11 Feb 2021 13:57:27 +0000
IronPort-SDR: 2AHEZrTnAmbakkvqRRGxcORPVzoShGEzlmyvTnRxjKS/+9mUq9GLIu0O74nc6w6m30lbWtrvhh
 NM8fpVCwPM5A==
X-IronPort-AV: E=McAfee;i="6000,8403,9891"; a="98416084"
X-IronPort-AV: E=Sophos;i="5.81,170,1610427600";
   d="scan'208,217";a="98416084"
Received: from awb://d1-wp-16exch02.ad.sec.gov (HELO awb://sec.gov) ([172.25.1.82])
  by awb://D1-IP01.SEC.GOV with ESMTP/TLS/ECDHE-RSA-AES256-GCM-SHA384; 11 Feb 2021 09:13:38 -0500
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV (172.25.1.82) by
awb://D1-WP-16EXCH02.AD.SEC.GOV (172.25.1.82) with Microsoft SMTP Server
(version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
15.1.2044.4; Thu, 11 Feb 2021 09:13:38 -0500
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::905b:502b:f618:40aa]) by
awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::905b:502b:f618:40aa%3]) with mapi id
15.01.2044.012; Thu, 11 Feb 2021 09:13:38 -0500
From: "Scarlato, Matthew" <scarlatom@SEC.GOV>
To: "chef_nita24@hotmail.com" <chef_nita24@hotmail.com>
```

136

```
Subject: Test
Thread-Topic: Test
Thread-Index: AdcAgBP9o+tRfk7nRpOizHr0X99vrw==
Date: Thu, 11 Feb 2021 14:13:38 +0000
Message-ID: <27415420f8604211b7ce37222ee3632b@SEC.GOV>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
dlp-product: dlpe-windows
dlp-version: 11.6.0.76
dlp-reaction: no-action
x-originating-ip: [172.25.196.30]
Content-Type: multipart/alternative;
        boundary="_000_27415420f8604211b7ce37222ee3632bSECGOV_"
MIME-Version: 1.0
X-RCIS-Action: ALLOW
```

**Tap to Download**
mime-attachment
396 bytes

**Tap to Download**
mime-attachment
9 KB

From: Mail Delivery System MAILER-DAEMON@d2-ip01.sec.gov
Subject: Undeliverable: SEC v. Lahr, No. 20-cv-1593-EGS (E.D. Pa.) – Motion
for Default Judgment
Date: Jul 21, 2021 at 5:00:52 PM

**Delivery has failed to these recipients or groups:**

tpm14@hotmail.com
A problem occurred while delivering your message to this email address. Try
sending your message again. If the problem continues, please contact your email
admin.

The following organization rejected your message: [104.47.18.161].

**Diagnostic information for administrators:**

Generating server: awb://D2-IP01.SEC.GOV

tpm14@hotmail.com
[104.47.18.161]
Remote Server returned '554 5.0.0 <[104.47.18.161] #5.0.0 smtp; 5.1.0 - Unknown address error 550-'5.5.0
Requested action not taken: mailbox unavailable (S2017062302). [awb://AM7EUR06FT022.eop-
eur06.prod.protection.outlook.com]' (delivery attempts: 0)>'

Original message headers:

```
IronPort-SDR: vm7+qBHVxk8+bpFSSo7W4rhVyUdbHNr7TobMb56ehtIbJnTUGcjNPaSsj6ZpbJRpAt5/NBK3F2
   XVYWbLHsKUcg==
X-IronPort-AV: E=McAfee;i="6200,9189,10052"; a="63623105"
X-IronPort-AV: E=Sophos;i="5.84,258,1620705600";
   d="pdf'?txt'?scan'208,217";a="63623105"
X-IronPort-DK-Sig: SEC_GOV
Received: from unknown (HELO awb://D2-DLPMAIL-02.AD.SEC.GOV) ([172.24.196.30])
   by awb://D2-IP01-DLP.SEC.GOV with ESMTP; 21 Jul 2021 16:59:36 -0400
Received: from awb://D2-IP01-DLP.SEC.GOV (unknown [172.24.196.30]) by awb://D2-
DLPMAIL-02.AD.SEC.GOV with smtp
      (TLS: TLSv1/SSLv3,128bits,ECDHE-RSA-AES128-GCM-SHA256)
      id 2dd9_1a61_fee5d7bb_07df_4933_814b_287b08829c4b;
      Wed, 21 Jul 2021 20:59:35 +0000
IronPort-SDR: DGBoi5K8lb7gbvasdsm6iuXttdMzZpy45nKqoUMhwjt9jeiajbzuq1OYa6K1F1mo5OhSXk3R+S
   FRB161Kz1T1A==
X-IronPort-AV: E=McAfee;i="6200,9189,10052"; a="63623103"
X-IronPort-AV: E=Sophos;i="5.84,258,1620705600";
   d="pdf'?txt'?scan'208,217";a="63623103"
Received: from awb://d1-wp-16exch01.ad.sec.gov (HELO awb://sec.gov) ([172.25.1.81])
   by awb://D2-IP01.SEC.GOV with ESMTP/TLS/ECDHE-RSA-AES256-GCM-SHA384; 21 Jul 2021 16:59:34 -0400
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV (172.25.1.82) by
```

**137**

awb://D1-WP-16EXCH01.AD.SEC.GOV (172.25.1.81) with Microsoft SMTP Server
(version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
15.1.2242.12; Wed, 21 Jul 2021 16:59:31 -0400
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::b56d:8aeb:7b33:ba3d]) by
awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::b56d:8aeb:7b33:ba3d%3]) with mapi id
15.01.2242.012; Wed, 21 Jul 2021 16:59:31 -0400
From: "Scarlato, Matthew" <scarlatom@SEC.GOV>
To: "tpm14@hotmail.com" <tpm14@hotmail.com>
Subject: FW: SEC v. Lahr, No. 20-cv-1593-EGS (E.D. Pa.) - Motion for Default
 Judgment
Thread-Topic: SEC v. Lahr, No. 20-cv-1593-EGS (E.D. Pa.) - Motion for Default
 Judgment
Thread-Index: Add9rS8Jn+nMpTtJR5OqI4j+n4lOWAAxffLg
Date: Wed, 21 Jul 2021 20:59:31 +0000
Message-ID: <45abe8a37d1841c9b22f870e88f9df9d@SEC.GOV>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
x-originating-ip: [172.24.196.30]
Content-Type: text/plain
MIME-Version: 1.0
X-RCIS-Action: ALLOW

**Tap to Download**
mime-attachment
392 bytes

**Tap to Download**
mime-attachment
2 KB

138

From: Mail Delivery System MAILER-DAEMON@d1-ip01.sec.gov
Subject: Undeliverable: Activity in Case 5:20-cv-01593-EGS SECURITIES & EXCHANGE COMMISSION v. Lahr et al Order
Date: Jul 22, 2021 at 8:51:29 AM

**Delivery has failed to these recipients or groups:**

tpm14@hotmail.com
A problem occurred while delivering your message to this email address. Try sending your message again. If the problem continues, please contact your email admin.

The following organization rejected your message: [104.47.74.33].

**Diagnostic information for administrators:**

Generating server: awb://D1-IP01.SEC.GOV

tpm14@hotmail.com
[104.47.74.33]
Remote Server returned '554 5.0.0 <[104.47.74.33] #5.0.0 smtp; 5.1.0 - Unknown address error 550-'5.5.0 Requested action not taken: mailbox unavailable (S2017062302). [awb://BN8NAM04FT008.eop-NAM04.prod.protection.outlook.com]' (delivery attempts: 0)>'

Original message headers:

```
IronPort-SDR: Shc8ePiO0Gs9HPKXO42C0V0b1k0EVfvgPR75cDdxFBkwg8nGm/N8ParzRveUtKROtcdCV+Bblk
  n/tPbYK9i8tg==
X-IronPort-AV: E=McAfee;i="6200,9189,10052"; a="125651423"
X-IronPort-AV: E=Sophos;i="5.84,261,1620705600";
   d="scan'208,217";a="125651423"
X-IronPort-DK-Sig: SEC_GOV
Received: from awb://d1lbltmbc01-2-intfloat-196-ne.sec.gov (HELO awb://D1-DLPMAIL-03.AD.SEC.GOV)
([172.25.196.30])
  by awb://D1-IP01-DLP.SEC.GOV with ESMTP; 22 Jul 2021 08:51:06 -0400
Received: from awb://D2-IP01-DLP.SEC.GOV (awb://d1lbltmbc01-2-intfloat-196-ne.sec.gov
[172.25.196.30]) by awb://D1-DLPMAIL-03.AD.SEC.GOV with smtp
        (TLS: TLSv1/SSLv3,128bits,ECDHE-RSA-AES128-GCM-SHA256)
        id 6a8a_0c1f_67858ae6_61fe_4e24_84a6_abfec629b936;
        Thu, 22 Jul 2021 12:51:05 +0000
IronPort-SDR: vwOJ6mgJ3u/V9ZPmY7H6e6ZKhzAgLOZenKltEeQxXVygOnnL+F093AkrtMYDbPrZE52v5viCSz
  1eDWAV50unow==
IronPort-HdrOrdr: A9a23:h+9AqatTWd/qveCfZ1cwtmu87skDr9V00zEX/kB9WHVpm62j5r
  2TdZEgviMc5wxxZJheo6HnBEDtex/hHN1OkPAs1M6ZLXLbUTKTXftfBOjZskHd8k/FltK1vJ
  0IG8JD4bvLYmSS5vyW3ODXKbgdKKTuytHRuQ4L9QYOcekXA5sQiDuRcjzrcXGeszM2YabRva
  Dsg/Z6mw==
X-IronPort-AV: E=McAfee;i="6200,9189,10052"; a="63688938"
```

**139**

**140**

X-IronPort-AV: E=Sophos;i="5.84,261,1620705600";
    d="scan'208,217";a="63688938"
Received: from awb://d1-wp-16exch05.ad.sec.gov (HELO awb://sec.gov) ([172.25.1.139])
 by awb://D2-IP01.SEC.GOV with ESMTP/TLS/ECDHE-RSA-AES256-GCM-SHA384; 22 Jul 2021 08:51:05 -0400
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV (172.25.1.82) by
 awb://D1-WP-16EXCH05.AD.SEC.GOV (172.25.1.139) with Microsoft SMTP Server
 (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.1.2242.12; Thu, 22 Jul 2021 08:51:05 -0400
Received: from awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::b56d:8aeb:7b33:ba3d]) by
 awb://D1-WP-16EXCH02.AD.SEC.GOV ([fe80::b56d:8aeb:7b33:ba3d%3]) with mapi id
 15.01.2242.012; Thu, 22 Jul 2021 08:51:05 -0400
From: "Scarlato, Matthew" <scarlatom@SEC.GOV>
To: "tpm14@hotmail.com" <tpm14@hotmail.com>
Subject: FW: Activity in Case 5:20-cv-01593-EGS SECURITIES & EXCHANGE
 COMMISSION v. Lahr et al Order
Thread-Topic: Activity in Case 5:20-cv-01593-EGS SECURITIES & EXCHANGE
 COMMISSION v. Lahr et al Order
Thread-Index: AQHXfnHDjEqfs43V9U+IXD8nO8BS1KtO8b4Q
Date: Thu, 22 Jul 2021 12:51:04 +0000
Message-ID: <dbde73018f42400ca65bfaa4853426bf@SEC.GOV>
References: <17740797@paed.uscourts.gov>
In-Reply-To: <17740797@paed.uscourts.gov>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
x-originating-ip: [172.24.196.30]
Content-Type: text/plain
MIME-Version: 1.0
X-RCIS-Action: ALLOW

| Tap to Download | Tap to Download |
| --- | --- |
| mime-attachment | mime-attachment |
| 390 bytes | 2 KB |

**140**



**\* COURT OF L'ENTREMONT**
CANTON OF VALAIS

Sembrancher, August 23, 2021

ZZ 20 2
U.S. Securities and Exchange Commission
Office of International Affairs
Andrew M. Lewczyk
100 F Street, NE
Washington, DC 20549-1004
USA

**ZZ 20 2 V / ref. : SEC v. Todd Lahr, et al., No. 5: 20-cv-1593 (E.D.P.A); 01A Ref: 2018-00283-006)**

Dear Mr. Lewczyk,

I am responding to your email of August 12, 2021.

Here is a summary of the operations that were carried out following the request for notification from the Securities and Exchange Commission (SEC):

The request of the SCE (Matthew Greiner) was received by post on April 14, 2020 at the Valais Cantonal Court, central authority for the canton of Valais according to the Hague Convention on November 15, 1965. It was transmitted to the district court of L'Entremont, competent for the location to make the notification taking into account the address of Thomas Megas indicated in the request. The documents were handed over to the Valais Cantonal Police for execution on April 16, 2016.

On April 22, 2020, the cantonal police notified the court that they had had telephone contact with Thomas Megas on April 20, 2020. According to the police, Thomas Megas explained that he was abroad until the end of August 2020, that he did not want to receive anything before his return and that he would resume contact. The police told the court that, according to official records, Thomas Megas was domiciled at the address indicated in the request. The court informed the SEC (Matthew Scarlato) by postal mail sent on April 27, 2020, indicating that without further direction, it would try to serve the documents again in September.

On August 31, 2020, the court ordered the police to make another attempt to serve the documents to Thomas Megas. On September 22, 2020, the SEC (Adam Anicich) contacted the Swiss Federal Office of Justice by email for updates on the notification. The message was sent to L'Entremont court on September 28, 2020. On September 29, 2020, the court replied to the SEC that the cantonal police had tried several times to contact Thomas Megas during the month of September. According to police, Thomas Megas was no longer answering the phone and there was no one at the address given in the request. The police left him a message to contact them but he did not follow up.

On October 2, 2020, the SEC (Andrew Lewczyk) contacted the court by email to ask what options were available under Swiss law

"G_UID" / LETTRE1 / 14

Rue du Collège 2 - CH-1933 Sembrancher - Tel. 027 607 81 80

-2-

to achieve notification of the documents to Thomas Megas. A telephone or video interview between the SEC and the court was proposed The court refused this option but proposed sending a memo about the applicable rules This proposal was accepted by the SEC on October 7, 2020 and the memo sent on October 8, 2020

On October 13, 2020, the court informed the SEC that the cantonal police had once again tried in vain to contact Thomas Megas on October 11, 2020. They announced that the documents would soon be returned to the USA which was sent by post on October 19, 2020 (Matthew Scarlato).

Regarding the document (Exhibit 1 to the Motion to Dismiss) attached to your message, the court can provide you with the following indications:

This document is an extract from an official Swiss formula called "Order to Pay". The order to pay is a summons that any person who claims to have a claim against another person can send to the latter. The sending of an order to pay does not prejudge the existence of the debt. The partial nature of the copy which was attached to your submission does not allow the court to determine from whom it was sent to whom it was addressed and to what this order to pay relates. You will find, in the appendix an example of a complete order to pay.

The order to pay is not a judicial act, but an administrative one. The court does not intervene in its notification which falls within the competence of an authority called the "Bankruptcy Office" including in cases which have an international character. If the document the copy of which was attached to your message was intended for Thomas Megas, it had to go through the Martigny and Entremont district Bankruptcy Office (rue du Léman 29, 1920 Martigny) which I invite you to contact directly.

The seal which appears on the copy attached to your sending is that of the police of the municipality of Bagnes. It is a local police to which the Bankruptcy Office resorts when it fails to notify an order to pay by post or when the request for notification comes from abroad. For its part, the court calls on the cantonal police of Valais. These are two different police forces. It is therefore not the cantonal agents that the court charged with the notification of your request between April and October 2020 and who tried to serve the order to pay on May 1, 2020.

Please accept. Dear Mr. Lewczyk. my distinguished greetings.

The District Judge:
P. Gapany [illegible signature] [Seal of the District Court of L'Entremont, Sembrancher]

**Appendices mentioned**

142

☒Addressee
☐**To another person**
First name, last name and relation to the recipient                [Stamp and signature of the
                                                                                                    Municipal Police of Bagnes]

_____
Date of the notification  [Handwritten: 05.01.2020]                Signature
                                                                                                    of the agent making the notification

Non-notifiable_____
☐Unclaimed                                    ☐In military service, civil service or civil protection until ….
☐Moved                                          ☒Recipient not found
☐Deceased

                                                       ☐ Reason
**Opposition / Opposition**_____


If the addressee intends to contest all or part of the debt or the right of the creditor to claim it by legal proceedings, he must file an **opposition**, that is to say, make, verbally or in writing, an **immediate** declaration to the person who gave the order to pay or to the undersigned office **within ten days** of the notification of the order to pay. If the lawsuit was instituted after the **bankruptcy** of the defendant and the latter wishes to argue that he has not returned to a better fortune, he must expressly indicate this in the motivation of the opposition (remarks). The prosecutor can lodge a complaint with the cantonal supervisory authority for violation of the provisions of the federal law on debt collection and bankruptcy. An information sheet on this subject can be obtained from the prosecution office or on the website www.portaildespoursuites.ch.

☒Total opposition
☐Partial opposition

Disputed amount in CHF_____                   Comments
                                                                        [Stamp and signature
Date [Handwritten: 05.01.2020]                        Municipal Police of Bagnes]
                                                                        **Signature**


**143**

**Order to Pay**

for the ordinary prosecution by way of seizure or bankruptcy prosecution          Lawsuit

_____

Debtor

Creditor

Representative of the creditor

Notification to the following persons

**The debtor is ordered to pay within 20 days the sums
below as well as the costs of the lawsuit.** If the debtor
has not obeyed his order to pay and does not form opposition,
the creditor to accept the continuation of the lawsuit.


| Title and date of the claim or cause of the obligation | Amount in CHF | Interest in % as of |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| Lawsuit costs | | |


If the payment is made to the Bankruptcy Office, it is recommended
to inquire beforehand with the Office of the exact amount to be paid
including interests. Additional collection costs of 0.5 % of the
amount will be collected at least CHF 5.00, maximum CHF 500.00

1/2

**144**

Lawsuit

Remarks                                    Subsequent fees for service

_____

_____

_____

☐Addressee
☐**To another person**
First name, last name and relation to the recipient
_____
Date of the notification                   Signature
                                           of the agent making the notification

Non-notifiable_____
☐Unclaimed                    ☐In military service, civil service or civil protection until ….
☐Moved                        ☐Recipient not found
☐Deceased
                              ☐ Reason

**Opposition / Opposition**_____


If the addressee intends to contest all or part of the debt or the right of the creditor to claim it by legal proceedings, he must file an **opposition**, that is to say, make, verbally or in writing, an **immediate** declaration to the person who gave the order to pay or to the undersigned office **within ten days** of the notification of the order to pay. If the lawsuit was instituted after the **bankruptcy** of the defendant and the latter wishes to argue that he has not returned to a better fortune, he must expressly indicate this in the motivation of the opposition (remarks). The prosecutor can lodge a complaint with the cantonal supervisory authority for violation of the provisions of the federal law on debt collection and bankruptcy. An information sheet on this subject can be obtained from the prosecution office or on the website www.portaildespoursuites.ch.

☐Total opposition
☐Partial opposition

Disputed amount in CHF_____            Comments

Date

                                         **Signature**

2/2

**145**



# Certification of Translation Accuracy

LATITUDE PRIME hereby certifies that the attached document(s), translated from <u>French</u> into <u>English</u> is, to the best of our knowledge and belief, a true, accurate, and complete translation of the following document(s):

20210823180157565

Executed this <u>25th</u> day of <u>August</u> 2021

Signed: _____

Latitude Prime LLC
80 S 8th St, Suite 900
Minneapolis, MN 55402

**ATA Member #** 260699   American Translators Association

**ISO 9001:2015 & ISO 17100:2015 Certified**

Order Number: O-03849

Latitude Prime LLC uses all available measures to ensure the accuracy of each translation but shall not be held liable for damages due to error or negligence in translation or transcription.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE       :
COMMISSION,                    :
                               :
            Plaintiff,         :       CIVIL ACTION NO. 20-1593
                               :
      v.                       :
                               :
TODD LAHR and THOMAS MEGAS,    :
                               :
            Defendants.        :

## ORDER

**AND NOW**, this 3rd day of September, 2021, after considering the *pro se* defendant's request to reconsider the court's denial a hearing via telephone or video conference (Doc. No. 31), it is hereby **ORDERED** as follows:

1.      The defendant's request to conduct the hearing telephonically (Doc. No. 31) is **DENIED**;[1] and

2.      The court's hearing on **Friday**, **September 10, 2021**, at **10:00 a.m.** will be held in-person at the Holmes Building, 101 Larry Holmes Drive, 4th Floor, Easton, Pennsylvania 18042.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] The defendant, Thomas Megas, has requested that the court hold the hearing regarding his motion to strike default judgment via telephonic means or by video conference. Request, Doc. No. 31. He claims that he is entitled to a virtual hearing because a physical hearing would be inconvenient for him and potentially result in exposure to COVID-19. *Id.* He additionally cites a supposedly extant court document encouraging the use of telephone and video conferencing during the pandemic as support for the notion that the court is somehow required to hold the instant hearing in person. *Id.* The court, however, notes that parties in this court are by no means entitled to a telephonic or video conference hearing. The court has conducted telephone and video conferences and will continue to do so but retains discretion in determining when and whether they are appropriate. In the instant circumstance, the court finds that an in-person hearing is appropriate, especially in this important case where critical issues of jurisdiction must be resolved, as well as issues of credibility.

**147**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1593 |
| | : | |
| v. | : | |
| | : | |
| TODD LAHR and THOMAS MEGAS, | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 9th day of September, 2021, it appearing that the *pro se* movant, Thomas Megas, is unable to attend the hearing on his motion to have the court dismiss the default judgment entered against him, *see* Doc. No. 38; and the court desiring to give the movant more time to personally appear; accordingly, it is hereby **ORDERED** that the evidentiary hearing currently scheduled for Friday, September 10, 2021, at 10:00 a.m is **RESCHEDULED** to **Friday, October 8, 2021** at **1:00 p.m.** at the Holmes Building, 101 Larry Holmes Drive, 4th Floor, Easton, PA 18042.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

**148**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE         :
COMMISSION,                      :
                                 :
            Plaintiff,           :          CIVIL ACTION NO. 20-1593
                                 :
      v.                         :
                                 :
TODD LAHR and THOMAS MEGAS,      :
                                 :
            Defendants.          :

## ORDER

**AND NOW**, this 19th day of October, 2021, after considering the *pro se* defendant's request that the hearing on the motion to strike default judgment be held telephonically (Doc. No. 42), it is hereby **ORDERED** as follows:

1.      The defendant's request to conduct the hearing telephonically (Doc. No. 42) is **DENIED**;[1] and

2.      The court's hearing on **Thursday, October 28, 2021**, at **3:00 p.m.** will be held in-person at the Holmes Building, 101 Larry Holmes Drive, 4th Floor, Easton, Pennsylvania 18042.

                                    BY THE COURT:

                                    /s/ *Edward G. Smith*
                                    EDWARD G. SMITH, J.

---

[1] The defendant, Thomas Megas, has requested that the court hold the hearing regarding his motion to strike default judgment via telephone. Request, Doc. No. 42. He claims that he is entitled to a virtual hearing because of his age, poor health, and COVID-19 restrictions. *Id.* Though this court is sympathetic to the issues the defendant raises, parties in this court are by no means entitled to a telephonic hearing. No existing adjustment to the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania would permit this hearing to be held by telephone. The court has previously conducted telephone conferences and will continue to do so but retains discretion in determining when and whether they are appropriate. In the instant circumstance, the court finds that an in-person hearing is appropriate, especially in this important case where critical issues of jurisdiction must be resolved, as well as issues of credibility.

**149**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1593 |
| | : | |
| v. | : | |
| | : | |
| TODD LAHR and THOMAS MEGAS, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this 29th day of October, 2021, the defendant Thomas Megas having failed to appear at the court's hearing on his motion to strike default judgment, it is hereby **ORDERED** as follows:

1.     The court will hold a rescheduled hearing by telephone on the motion to strike default judgment on **Wednesday, November 10, 2021**, at **3:00 p.m.** The defendant and counsel for the plaintiff shall call 1-571-353-2300 and use pin 363973916# to enter the conference call;

2.     The court's order denying the motion for recusal of the undersigned filed by the defendant Thomas Megas (Doc. No. 45), entered on October 27, 2021, is **VACATED** in order to give the defendant an opportunity to be heard on the motion at the above date and time; and

3.     If the defendant fails to participate in the telephone hearing, his motion may be denied for failure to prosecute.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

**150**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
                  Plaintiff,     :          CIVIL ACTION NO. 20-1593
                                 :
        v.                       :
                                 :
TODD LAHR and THOMAS MEGAS,      :
                                 :
                  Defendants.    :

## ORDER

**AND NOW**, this 12th day of November, 2021, after a hearing on the motion to strike the default judgement filed by the defendant, Thomas Megas (Doc. No. 37), it is hereby **ORDERED** as follows:

1.      The defendant shall have until **December 10, 2021** to file a supplemental brief in support of his motion to strike the default judgment and in support of his motion for recusal of the undersigned;

2.      The plaintiff shall have until **January 10, 2022** to file a response in opposition to the defendant's supplemental brief; and

3.      The court will hold an oral argument via telephone on this matter on **Thursday, January 20, 2022** at **9:30 a.m.** The defendant and counsel for the plaintiff shall call 1-571-353-2300 and use pin 363973916# to enter the conference call.

                                BY THE COURT:


                                /s/ *Edward G. Smith*
                                EDWARD G. SMITH, J.

**151**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TODD LAHR, and THOMAS MEGAS, <br><br> Defendants. | No. 5:20-cv-1593-EGS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT THOMAS MEGAS' SUPPLEMENTAL BRIEF**

Pursuant to the Court's November 12, 2021 Order (Dkt. No. 51), Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this response in opposition to Defendant Thomas Megas' supplemental brief ("Supplemental Brief" or "Supp. Br."),  Dkt. Nos. 52-54, in support of his motion to vacate the default judgment ("Motion" or "Mot."), Dkt. No. 29.

**PRELIMINARY STATEMENT**

Megas has had ample opportunity to challenge this Court's July 30, 2021 Default Judgment against him ("Default Judgment"), Dkt. No. 27, yet his arguments fall far afield from the exacting standard required to grant his Motion.  This Court may only vacate the Default Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule"), and it imposes a "heavy burden" upon Megas to show either exceptional circumstances such as misconduct by the Commission, *Gochin v. Thomas Jefferson Univ.*, 667 Fed. Appx. 365, 367 (3d Cir. 2016), or that the Court's judgment lacked even an "arguable basis for jurisdiction." *United Student Aid Funds, Inc. v. Esponisa*, 559 U.S. 260, 271 (2010).  As demonstrated in the Commission's prior briefing, Megas

**152**

fails to make any such extraordinary showing; rather, all of his arguments are belied by the law and the facts of this case. *See* Plf. Opp., Dkt. No. 32; Plf. Supp. Filing, Dkt. No. 34.

If there were any doubt, the Court's November 10, 2021 hearing on his Motion ("Hearing") laid those doubts to rest. Megas' testimony during the Hearing served only to further undermine his case in several respects. First, Megas admitted that he had actual notice of this litigation approximately *one year before* the Default Judgment, yet he chose to do nothing about it until *after* the Default Judgment was entered. Hearing Tr., Dkt. No. 55, at 8:12-9:25; 16:14-17:8; 39:6-11. "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *United Student Aid Funds, Inc.*, 559 U.S. 260 at 275. Megas' admission is therefore fatal to his Motion.

Second, Megas' testimony supported, not undermined, the Commission's evidence that he sought to evade service. When confronted with evidence that he told the Swiss authorities that he was not in Switzerland when the Swiss authorities tried to serve him in April 2020, Megas refused, under oath, to admit or deny that he made that statement. Hearing Tr. 39:16-41:22. His failure to dispute this evidence confirms its truth. And given Megas' inconsistent assertion before this Court that he was in Switzerland at the time, this Court should conclude that Megas sought to evade service by misinforming the Swiss authorities as to his whereabouts.

Megas' testimony concerning his use of his Hotmail email account further bolsters the evidence that he sought to evade service. At the Hearing, Megas did not deny that he may have been involved in making changes to his Hotmail email account while the Commission was attempting to contact and serve him at that address. Rather, Megas admitted that he worked with a "team" of people that had access to his Hotmail email account, and when questioned, he did not deny that he may have asked someone to make changes to the account that gave the appearance

2

**153**

that he was not using it, and to later deactivate it after the Commission served him at that email address.  Hearing Tr. 24:23-28:18.

Put together, Megas' testimony confirmed the prior factual record that demonstrated that he knew about this litigation long before the Default Judgment, yet he did nothing about it except to obfuscate the Commission's ability to serve him.  These facts cement the reasons why this Court should not disturb the Default Judgment.

Nor does Megas' Supplemental Brief aid his cause.  Mages primarily makes factual assertions that lack any relevance to the Commission's Complaint or the Default Judgment, and he otherwise rehashes arguments that the Commission has already demonstrated their legal and factual flaws.  Thus, this Court should deny Megas' motion to vacate the Default Judgment.

## ARGUMENT

I.      **This Court Should Reject Megas' Argument That He Was Not Properly Served**

Megas' primary challenge to the Default Judgment is that he was not properly served because the Commission failed to comply with Rule 4 and the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").  Supp. Br. at 12-13; *see also* Hearing Tr. 5; 15.   The Commission has already demonstrated that Megas' argument rests on a misunderstanding of the law.  *See* Plf. Opp., Dkt. Nos. 32, at 15-16.  Pursuant to Article 1 of the Hague Convention, the Hague Convention applies only if a defendant's address is known to a reasonably diligent plaintiff.  *Braverman Kaskey, P.C. v. Toidze*, 599 Fed. Appx. 448, 452 (3d Cir. 2015).  In granting the Default Judgment, the Court relied upon a well-developed factual record demonstrating the Commission's good faith, diligent efforts to locate and serve Megas in several countries over the course of almost a year, as well as evidence that Megas knew of this litigation and did nothing other than try to evade service.

3

**154**

*See* Plf. Opp., at 11-15.  Thus, regardless of where Megas, in fact, was at the time, this Court correctly held that the Hague Convention did not apply, and authorized alternative service of Megas via email.  *See Braverman Kaskey, P.C.*, 599 Fed. Appx. at 453 (upholding alternative service of a defendant residing in Russia despite the fact that Russia prohibited service in that manner because the defendant "failed to produce any evidence that would indicate [plaintiff] knew or reasonably should have known she had moved to Russia.")

Megas has produced no evidence to undermine this conclusion.  In fact, Megas' testimony at the Hearing supported ***the Commission's*** position, not his own.  During the Hearing, Megas admitted that he was aware of this litigation in July 2020 – ***a year before*** the Default Judgment – and he testified that he "definitely decided to do nothing at the time because I realized that service had run out."  Hearing Tr. 16:18-17:9; *see also* Hearing Tr. 8:12-9:25; 39:6-11.  This testimony runs afoul of the Supreme Court's admonition that "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights."  *United Student Aid Funds* 559 U.S. 260 at 275.  Megas' admission that he did just that further dooms his Motion.

In addition, Megas' testimony at the Hearing bolstered the Commission's evidence that he sought to evade service.  Megas' argument hinges upon his claim that he was in Switzerland while the Commission was attempting to effect service.  *See* Mot. at ¶¶ 4, 31.  That assertion cannot be squared with the Swiss authorities' report to the Commission that, when attempting to serve Megas pursuant to the Hague Convention in April 2020, Megas informed them that he was ***not*** in Switzerland.  *See* Declaration of Matthew Scarlato, Ex. 2, Dkt. No. 32-3, at 1.  At the Hearing, Megas was confronted with this evidence, and, under oath, he refused to admit or deny that he made that statement despite being asked several times by counsel and the Court.  Hearing Tr. 39:16-41:22.  It is therefore uncontrovertibly true that the Swiss authorities' report is accurate.

Thus, if Megas' present claim that he was in Switzerland at the time is true, he mislead the Swiss authorities.  And if Megas had cooperated with the Swiss authorities rather than mislead them, they should have been able to effect service via the Hague Convention.  Because Megas failed to do so, the Commission's Hague Convention request was unsuccessful, which resulted in a protracted effort to locate and ultimately serve him via email.  This Court should not now permit Megas to use the Hague Convention as a shield.  *See SEC v. Secure Cap. Funding Corp*, No. 11-cv-0916, 2011 WL 13143141, at *2 (D.N.J. Aug. 3, 2011) (granting alternative service via email because, among other things, plaintiff "sufficiently demonstrated 'deliberate avoidance and obstruction by . . . [defendant] that makes the giving of notice impossible") (quoting *SEC v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987)).

Furthermore, Megas' testimony at the Hearing supported the conclusion that he sought to evade service by creating a misleading automatic reply on his Hotmail email account after the Commission contacted him there, and then deactivating the email account after he was served.  *See* Pl. Opp. at 10.  At the Hearing, Megas admitted that he worked with a "team" of people that had access to his Hotmail email account, and he did not deny that he may have asked someone to create the automated response or to later deactivate his Hotmail account.  Hearing Tr. 24:23-28:18.  This failure to deny the Commission's evidence further supports the conclusion that he was actively trying to prevent the Commission from serving him via email.[1]

---

[1]     Megas also challenges the Commission's use of his Hotmail email address to serve him, but not other email addresses that he used.  Supp. Br. at 13; Hearing Tr. at 6.  However, Megas' other email addresses were Swiss-based, in contrast to Hotmail, which is U.S.-based, and counsel for the Commission did not want to raise the possibility that serving a Swiss-based email address might run afoul of Swiss law prohibiting email service.  And once it was determined that Megas' Hotmail address remained active, there was no need to utilize these Swiss-based email addresses.  Indeed, Megas' actions serve to confirm the wisdom of this decision, now that he has hired a lawyer and accused the Commission and its counsel of criminal acts in Switzerland.  *See* Notice, Dkt. No. 39.

Thus, neither the law nor the facts support Megas' arguments that he was not lawfully served.  Rather, his sworn testimony only further cements the conclusion Megas learned of this litigation only to sleep on his rights and try to evade service while the Commission took substantial efforts over a year to obtain the Default Judgment.  This Court should reject Megas' belated attempt to undo the Commission's diligent efforts to prosecute this case and deny his Motion.

## II.      This Court Possessed Personal Jurisdiction Over Megas

Megas also challenges the Court's holding that it possessed personal jurisdiction over him.  Supp. Br. at 10-11.  He argues that this Court lacked jurisdiction because Megas never conducted business in this District, and never interacted with any of the alleged victims in this case.  *Id.*  Again, however, Megas misunderstands the law.  This Court may assert specific personal jurisdiction over Megas if he had "minimum contacts" with the forum such that "he could reasonably anticipate being involved in litigation in the United States."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368-80 (3d Cir. 2002) (quoting *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290 (3d Cir. 1985)).  Contrary to Megas' argument, the proper forum in which to judge Megas' contacts is the United States as a whole, not just this District.  Because the Commission brings this case pursuant to two Federal statutes that permit nationwide service of process, *see* 15 U.S.C. §§ 77aa(a), 78u(c), this Court analyzes personal jurisdiction "on the basis of the defendant's national contacts."  *Pinker*, 292 F.3d at 369.

The Complaint alleges substantial facts that readily satisfy a minimum-contacts analysis.  Megas had numerous contacts with the United States related to the unlawful conduct alleged in the Complaint.  A company through which Defendants ran the alleged fraud, Ferran Global Holdings Inc. ("Ferran"), was a United States securities issuer, and Megas was its CEO, Treasurer, and Chairman of its Board of Directors.  Dkt. No. 1, Compl. ¶ 9.  Megas also filed the Form D with the Commission concerning Ferran's fundraising.  *Id.* ¶ 31.  To raise funds as part of Ferran's

6

**157**

allegedly fraudulent activity, Megas frequently communicated over email and other means with

Defendant Todd Lahr, who resided in this District, and Megas twice traveled to the United States

to meet with investment bankers and others to raise money for Ferran. *Id*. ¶¶ 5, 25-27, 85. Megas

also received several wires of Ferran investor funds from Ferran's bank account in the United

States, and Megas further sent two wires to bank accounts controlled by Lahr in the United States

in furtherance of Megas' and Lahr's alleged fraud. *Id.* ¶ 5. Based on these numerous contacts with

the United States that specifically relate to the allegedly unlawful conduct at issue, Megas could

reasonably anticipate being sued here in accordance with a minimum-contacts analysis. *See Kyko*

*Global, Inc. v. Prithvi Info. Solutions, Ltd.*, No. 2:18-cv-01290, 2020 WL 1159439, at *28 (W.D.

Pa. Mar. 10, 2020) (holding that defendants' receipt of wire transfers within the forum in

furtherance of a conspiracy to defraud plaintiffs were sufficient to assert specific jurisdiction);

*CFTC v. Worldwide Commodity Corp.*, 366 F. Supp. 2d 276, 282-83 (E.D. Pa. 2005) (asserting

personal jurisdiction over foreign defendant who was involved in another party's fraudulent

solicitation of customers in the forum).

　　Thus, Megas' arguments as to his lack of contacts with this District lack merit. This

Court should deny his Motion.[2]

---

[2]　　Megas' Supplemental Brief also makes various factual assertions concerning Bancorp International Group, Inc. ("Bancorp"). Supp. Br. at 1-10. It is unclear what relevance, if any, these allegations have to the Commission's Complaint or the Court's Default Judgment. The Commission therefore need not respond to them. To the extent a response is required, the Commission denies Megas' allegations concerning Bancorp or any other factual allegations beyond that alleged in its Complaint. Furthermore, Megas, for the first time, obliquely claims that the Commission unlawfully accessed his financial information, but he fails to substantiate those claims or otherwise explain how they bear upon the Default Judgment. *See* Supp. Br. at 11-12. The Commission therefore need not respond to them, but it vehemently denies that it obtained any information unlawfully as part of this case.

## CONCLUSION

For the foregoing reasons, and as demonstrated in the Commission's prior briefing upon

Megas' Motion, this Court should deny Megas' Motion to vacate the Default Judgment.


Dated:  January 10, 2022

Respectfully submitted,

s/ Matthew Scarlato
Matthew Scarlato*
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC  20549
 (202) 551-3749
scarlatom@sec.gov

*Appearing pursuant to Local Civil
  Rule 83.5(e)


OF COUNSEL:
Amy Friedman
Sonia G. Torrico
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC  20549

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

      **v.**

TODD LAHR, and
THOMAS MEGAS,

           Defendants.

No. 5:20-cv-1593-EGS

## DECLARATION OF MATTHEW SCARLATO

I, Matthew Scarlato, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Trial Attorney with the Securities and Exchange Commission ("Commission"). I am counsel of record for the Commission in this case. I am making this Declaration in support of the Commission's Motion for Default Judgment against Defendant Thomas Megas.

2. On March 23, 2020, the Commission filed its Complaint against Defendants Megas and Todd Lahr, alleging that Defendants fraudulently operated an offering fraud and Ponzi scheme, and illegally engaged in unregistered offer and sales of securities. Doc. No. 1.

3. At the time, the Commission had reason to believe that Megas resided in Switzerland, and thus, it sent a request to the Swiss authorities to serve Megas pursuant to the Hague Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") in accordance with Rule 4(f) of the Federal Rules of Civil Procedure.

1

**160**

4.  On May 18, 2020, I received a letter from the Swiss authorities concerning the Commission's Hague Convention request.   A true and correct copy of that letter, which is dated April 27, 2020, is attached hereto as Exhibit 1.  That letter attached an April 22, 2020 letter from the Swiss local police that was written in French, and a true and correct copy of a certified translation of the April 22, 2020 letter into English is attached hereto as Exhibit 2.

5.  On September 29, 2020, the Swiss authorities informed the Commission that it had made several efforts in September 2020 to contact Megas via telephone and to effect service upon Megas at his known address, but they were unsuccessful.

6.  After additional communication between the Commission and the Swiss authorities, on October 8, 2020, a Swiss representative informed the Commission that it would make one more effort to serve Megas on October 11, 2020.  The Swiss representative further noted that they do not know where Megas is currently located because no one has been at Megas' home address, and that Megas had not been seen in the area.

7.  On October 13, 2020, the Swiss representative informed the Commission that they were again unable to locate Megas on October 11, 2020, and that the Swiss authorities were going to return the Commission's Hague Service request without completing personal service upon Megas.

8.  On October 27, 2020, I sent Megas an email to his known email address, tpm14@hotmail.com, a copy of that email is attached hereto as Exhibit 3.  I did not receive any response to my email.

9.  In January 2021, I made several efforts to serve Megas at the possible addresses in the United Kingdom.  First, I attempted service via international mail in accordance with Rule 4(f)(2)(C)(ii) at the three possible addresses in the United Kingdom.  One of those mailings was

returned undelivered, and the other two were left at the address but were signed by the mail carrier, not by Megas or any individual who resided at those locations.  Second, I submitted Hague Convention requests to the authorities in the United Kingdom to attempt service at all three addresses.  In February 2020, British authorities informed the Commission that it was returning the Hague Convention requests without attempting service, claiming that it needed additional information to complete the request.  Given the failed attempts to serve Megas by international mail at these same addresses, the Commission did not further pursue this alternative to service.

10.    On February 10, 2021, I served Megas with the Summons and Complaint via email to tpm14@hotmail.com, a true and correct copy of which is attached hereto as Exhibit 4.

11.    When sending my February 10, 2021 email, I utilized a technology platform called RPost that permits an email user to send certified electronic communications that provide proof of delivery, and read receipts if the recipient opens the email.  After sending the email, RPost generated an authenticated email receipt that showed that my email was successfully delivered to Megas' email address.  A true and correct copy of that authenticated email receipt from RPost is attached hereto as Exhibit 5.

12.    In addition, I received an automated response to my February 10, 2021 email to Megas, a copy of which is attached hereto as Exhibit 6.

13.    Thereafter, I sent an email to an inactive Hotmail address to be able to compare its format with the format of the automated response I received from Megas' Hotmail account. After sending, I received an automated reply from Hotmail, a copy of which is attached hereto as Exhibit 7.  It has several obvious differences with the format of the automated response I

**162**

received in response to my February 10, 2021 email to Megas, including a different subject line and different message body.

14.     Megas was aware of the Commission's investigation that preceded this litigation. In early 2017, he discussed it with Lahr, and Megas provided a written narrative to the Commission through Lahr in August 2017.  In addition, Megas knows about the related criminal action pending in this Court against Defendant Lahr.  Commission staff reviewed a record of an interview of a third party in the related criminal case, and it evidenced that the third party received a phone call from Megas in April 2020, and Megas asked about the status of Lahr's related criminal case.

15.     Megas' response to the Complaint was due on March 3, 2021.

16.     Megas has not entered his appearance in this case, nor has an attorney entered an appearance on Megas' behalf.

17.     Megas has not filed any response to the Complaint, and has not communicated to the Commission any intent to defend this action.

18.     Megas is not an infant or incompetent person, and he is not in the military service of the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20st day of July, 2021, in Washington, D.C.

s/ Matthew Scarlato
Matthew Scarlato

4

**163**